Luis A. Martínez Segarra y Blanca I. Rosa Hernández, querellantes, *v.* Juan M. Rosado Santoni, recurrido, y Javier A. Echevarría Vargas, en su carácter de Secretario del Departamento de Asuntos del Consumidor, agencia peticionaria.

*Número:* CC-2003-788          *Resuelto:* 14 de septiembre de 2005

---

*Luis Rafael Linares*, abogado de la parte peticionaria; *Luis A. Martínez Segarra*, abogado y parte querellante; *Adalberto Moret Rivera*, abogado de la parte recurrida.

El Juez Pesidente Señor Hernández Denton emitió la opinión del Tribunal.

El caso de autos requiere que determinemos si el Departamento de Asuntos del Consumidor (D.A.Co.) tiene jurisdicción para considerar una controversia entre un contratista de obra y la compañía suplidora de hormigón, dentro del procedimiento administrativo sobre incumplimiento de contrato que iniciaron los dueños de la obra en su contra. Veamos.

I

El Sr. Luis Martínez Segarra y su esposa, la Sra. Blanca Rosa Hernández, suscribieron un contrato de construcción de obra con el contratista Sr. Juan Rosado Santoni. En el referido contrato, las partes estipularon que el señor Rosado Santoni construiría la fase inicial de una estructura que sería dedicada a vivienda, conforme a las especificaciones, tamaño y calidad identificados en los planos preparados por el Ing. Rafael Torres García. Dicha obra incluiría, entre otras, la construcción de zapatas, muros y columnas en hormigón reforzado. Además, se estableció que el señor Rosado Santoni sería responsable de suministrar todos los materiales necesarios para la construcción. Se acordó, finalmente, que los esposos Martínez-Rosa pagarían una suma de veintinueve mil trescientos dólares, los cuales serían desembolsados en tres plazos, según concluyeran las etapas de la construcción.

Así las cosas, el señor Rosado Santoni comenzó a construir la obra pactada. Posteriormente, con el propósito de inspeccionar la construcción en progreso y a instancias del ingeniero Torres García, el matrimonio Martínez-Rosa solicitó que se realizaran pruebas de compresión al hormigón

utilizado en las zapatas, columnas y muros erigidos.[1] Los resultados de estas pruebas fueron insatisfactorios, pues no cumplieron con la resistencia mínima de tres mil libras por pulgada cuadrada requeridas en los planos de construcción. En vista de ello, el ingeniero Torres García paralizó la edificación.

Los esposos Martínez-Rosa le requirieron al señor Rosado Santoni, en varias ocasiones, que realizara sus propias pruebas de compresión y corrigiera la construcción para adaptarla a los planos aprobados. Sin embargo, éste negó su responsabilidad. Adujo que había cumplido con todas las cláusulas convenidas y que, de existir algún problema, era entre los esposos Martínez-Rosa y Macro Mix, Inc., compañía que suplió el hormigón a petición del señor Rosado Santoni. Luego de ello, este último abandonó la obra, llevándose consigo el equipo y las herramientas.

A raíz de estos hechos, los esposos Martínez-Rosa entablaron una querella ante D.A.Co. contra el señor Rosado Santoni, en la que alegaron, en síntesis, un incumplimiento contractual. Solicitaron que el señor Rosado Santoni corrigiera la obra y terminara la etapa contratada para que, una vez concluida satisfactoriamente, se procediera con el pago pactado. En la alternativa, de no acceder el señor Rosado Santoni a corregir y culminar la obra, reclamarían la devolución del dinero invertido.

Tras ciertos trámites procesales, D.A.Co. celebró una primera vista administrativa. El matrimonio Martínez-Rosa presentó evidencia para establecer que el hormigón utilizado no cumplía con la calidad especificada en los planos.[2] Luego de ello, el señor Rosado Santoni solicitó la

---

[1] Las compañías independientes Western Soil, Inc. y Advanced Soil Engineering realizaron esas pruebas.

[2] Los esposos Martínez-Rosa presentaron en evidencia el informe y el testimonio del Dr. Eduardo Ramírez Santiago, perito en ingeniería estructural, quien concluyó que la calidad del hormigón utilizado no cumplía con las especificaciones de los planos de construcción ni con la reglamentación vigente aplicable a proyectos de vivienda familiar. El perito recomendó la demolición de los elementos estructurales afectados. Igualmente, los esposos presentaron el testimonio del ingeniero Torres García, quien inspeccionó la construcción y declaró sobre el riesgo de colapso de la estructura debido a la resistencia inadecuada de sus cimientos.

inclusión de Macro Mix, Inc. como parte de la querella. Fundamentó su petición en que fue ésta la compañía que él contrató para suplir el hormigón y era parte indispensable en los procedimientos. En vista de lo anterior, D.A.Co. señaló una segunda vista administrativa, en la cual incluyó a Macro Mix, Inc.

Celebrada esta última vista, D.A.Co. emitió una resolución en la que ordenó al señor Rosado Santoni rembolsar a los esposos Martínez-Rosa la cantidad de dieciocho mil trescientos dólares. Además, declaró "no ha lugar" la solicitud del señor Rosado Santoni de incluir a Macro Mix, Inc. como parte de la querella. Razonó que los esposos Martínez-Rosa presentaron la querella por incumplimiento de contrato exclusivamente contra el señor Rosado Santoni. Añadió que la controversia que pudiera existir entre el señor Rosado Santoni y Macro Mix, Inc. sobre el material suplido era un pleito entre comerciantes en el que D.A.Co. carece de jurisdicción.

Insatisfecho, el señor Rosado Santoni solicitó al Tribunal de Apelaciones la revisión judicial del referido dictamen. Dicho foro apelativo modificó la resolución recurrida a los efectos de ordenar a D.A.Co. la celebración de una vista para determinar si Macro Mix, Inc. cumplió o no su obligación con el señor Rosado Santoni, y el daño ocasionado a éste en caso de incumplimiento.

Inconforme, D.A.Co. trae ante nos el presente recurso de *certiorari*. Aduce, en resumen, que carece de jurisdicción para entender en una controversia entre dos comerciantes. Por dicha razón, alega que erró el Tribunal de Apelaciones al ordenarle que celebrara una vista para dilucidar y adjudicar la relación contractual entre un contratista y la compañía suplidora de hormigón. Vista la petición, acordamos expedir. Las partes han comparecido a exponer sus respectivas posiciones. Con el beneficio de ellas, resolvemos.

## II

Al atender la controversia que nos ocupa, partimos de la norma firmemente establecida de que los tribunales apelativos deben conceder deferencia a las decisiones administrativas, en vista de la vasta experiencia y el conocimiento especializado que poseen las agencias que las emiten. *Otero v. Toyota*, 163 D.P.R. 716 (2005); *Pacheco v. Estancias*, 160 D.P.R. 409 (2003). Es por ello que los tribunales sostendrán las determinaciones de hecho que formule una agencia, siempre que exista en el expediente administrativo evidencia sustancial que las apoye. Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2175; *Torres v. Junta Ingenieros*, 161 D.P.R. 696 (2004); *Rebollo v. Yiyi Motors*, 161 D.P.R. 69 (2004).

Ahora bien, los tribunales pueden revisar las conclusiones de derecho en todos sus aspectos. Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, *supra*; *Torres v. Junta Ingenieros*, 161 D.P.R. 696 (2004); *Rebollo v. Yiyi Motors*, 161 D.P.R. 69 (2004); *Miranda v. C.E.E.*, 141 D.P.R. 775 (1996). Desde luego, esto no significa que los tribunales, al ejercer su función revisora, puedan descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. *Otero v. Toyota*, supra; *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 D.P.R. 269 (2000). La doctrina sobre la revisión judicial reconoce, igualmente, que la interpretación de un estatuto por el organismo que lo administra y del cual es responsable de su cumplimiento merece gran respeto y deferencia judicial. *Procuradora Paciente v. MCS*, 163 D.P.R. 21 (2004); *Pacheco v. Estancias*, supra; *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70 (2000).

Hemos resuelto que los tribunales deben sostener las conclusiones de derecho del organismo administrativo en la medida en que éstas se ajusten al mandato de ley.

*P.R.T.C. v. J. Reg. Tel. de P.R.*, supra. Incluso, en casos marginales o dudosos, la interpretación de un estatuto que haga la agencia encargada de velar por su cumplimiento merece deferencia sustancial, aun cuando esa interpretación no sea la única razonable. Íd.

Claro está, no cabe hablar de deferencia judicial cuando nos encontramos ante una interpretación estatutaria que afecta derechos fundamentales, resulta irrazonable o conduce a la comisión de injusticias. *Costa, Piovanetti v. Caguas Expressway*, 149 D.P.R. 881 (1999). Asimismo, "cuando la agencia interpreta el estatuto que viene llamado a poner en vigor de forma tal que produce resultados contrarios al propósito de la ley, dicha interpretación no puede prevalecer". *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263, 280 (1999). Véanse, además: *Pacheco v. Estancias*, supra; *Costa, Piovanetti v. Caguas Expressway*, supra.

Tomando en consideración la normativa expuesta, evaluemos el propósito que inspiró la creación del Departamento de Asuntos del Consumidor y su jurisprudencia interpretativa.

## III

A. Mediante la Ley Núm. 5 de 23 de abril de 1973 (Ley Núm. 5), 3 L.P.R.A. sec. 341 *et seq.*, la Asamblea Legislativa creó el Departamento de Asuntos del Consumidor con el propósito primordial de vindicar e implementar los derechos del consumidor. Aun cuando existía en aquel entonces una legislación protectora de este sector de la población, el legislador entendió necesaria la creación de este organismo administrativo, a nivel de gabinete, con el objetivo de garantizarle al consumidor la debida atención a sus problemas. Exposición de Motivos de la Ley Núm. 5, *supra*, 1973 Leyes de Puerto Rico 17; *Quiñones v. San Rafael Estates, S.E.*, 143 D.P.R. 756 (1997).

Según surge de su Exposición de Motivos, la aprobación de la Ley Núm. 5 respondió principalmente a lo siguiente:

La complejidad del mercado de bienes y servicios, unido al sinnúmero de prácticas indeseables que algunos *comerciantes y manufactureros* llevan a cabo, requieren la creación de un organismo efectivo capaz de sacar *al consumidor del estado de indefensión y desvalimiento en el cual se encuentra.* Este organismo deberá ventilar y adjudicar *las querellas traídas por los consumidores*, fiscalizar el cumplimiento de las leyes cuyo objetivo es proteger al consumidor, educar al consumidor y ponerle al consumidor representación adecuada en la defensa de todos sus derechos. (Énfasis suplido.) Leyes de Puerto Rico, *supra*, pág. 17.

■ En vista de ello, se creó a D.A.Co. como una agencia especializada, con personal profesional y técnico altamente competente, para poder vindicar los derechos del consumidor de forma agresiva y firme. Exposición de Motivos de la Ley Núm. 5, *supra*, págs. 17–18. Se le confirió, a través de su Secretario, la facultad para "[a]tender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía". 3 L.P.R.A. sec. 341e(c). Además, se le impuso el deber de implementar una estructura de adjudicación administrativa mediante la cual se consideraran las querellas de los consumidores y se concedieran los remedios pertinentes conforme a derecho. 3 L.P.R.A. sec. 341e(d). En fin, se adoptó todo un esquema administrativo dirigido a minimizar los efectos de la desigualdad económica y de conocimiento técnico entre los proveedores de bienes y servicios y el consumidor.

Cabe señalar que la intención legislativa y la política pública de proteger y vindicar los derechos del consumidor no surgió con la creación de D.A.Co. Éstas ya se habían manifestado al establecerse en 1968 su antecesora, la Administración de Servicios al Consumidor, entidad administrativa que poseía funciones, poderes y deberes sustancialmente similares a los de D.A.Co. Véase *Hernández Denton v. Quiñones Desdier*, 102 D.P.R. 218 (1974). Al momento de instituir la referida agencia, la Asamblea Legislativa reconoció el problema que, aun en aquella época, afrontaba el consumidor, y lo relató de la manera siguiente:

Si bien varios organismos gubernamentales tienen jurisdicción sobre asuntos que afectan sus intereses, el consumidor no cuenta con un organismo efectivo, público o privado, *que vele única y exclusivamente por sus intereses peculiares como grupo*, contrario a l[o] que sucede con los trabajadores, *comerciantes*, industriales, agricultores y otros. Ello contribuye a que en ocasiones se ignoren los problemas especiales que afectan en un momento dado al grupo consumidor y a que sus puntos de vista pasen frecuentemente inadvertidos. (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 148 de 27 de junio de 1968, Leyes de Puerto Rico, pág. 460.

Aun cuando la Administración de Servicios al Consumidor quedó suprimida por la aprobación de la Ley Núm. 5, no cabe duda que el propósito legislativo que inspiró su creación fue preservado y transferido a D.A.Co., quien retuvo todas las funciones, poderes y deberes de aquélla, por mandato expreso de ley. Véase 3 L.P.R.A. sec. 341d(a)(1).

■ B. Resulta, pues, meridianamente claro que "[e]l espíritu que informó la creación de D.A.Co. y la aprobación de su ley orgánica fue precisamente facilitar al consumidor la vindicación de sus intereses con un vehículo procesal ágil y eficiente, más costo-efectivo y que equiparara el poder de los consumidores con el de los proveedores de bienes y servicios". *Residentes Pórticos v. Compaq*, 163 D.P.R. 510 (2004). Igualmente, se persigue dicho propósito mediante la simplificación de los procedimientos de adjudicación disponibles al consumidor y evitando los remedios tardíos. *Rodríguez v. Tribunal Superior*, 104 D.P.R. 335 (1975). Por consiguiente, su sistema administrativo tiene que estar dotado de una flexibilidad mayor que la del trámite judicial ordinario, de manera que se propicie el uso eficiente por parte de personas legas. *Srio. D.A.C.O. v. J. Condóminos C. Martí*, 121 D.P.R. 807 (1988). De otra forma, "[l]os remedios tardíos y los procedimientos complicados derrotarían todo el propósito de las leyes y de las oficinas creadas para la defensa del consumidor". *Pérez Ríos v. Hull Dobbs*, 107 D.P.R. 834, 840–841 (1978).

■ En atención a ello, hemos resuelto que "[l]a

inclusión de un tercero en el proceso administrativo [ante D.A.Co.] sin que el querellante o la agencia lo estime necesario o conveniente, complica y retarda innecesariamente el procedimiento", en contravención a la filosofía que informa dicho trámite administrativo. *Pérez Ríos v. Hull Dobbs*, supra, pág. 841. Sencillamente, resulta pernicioso para el consumidor querellante tener que aguardar por su remedio mientras la agencia dilucida la responsabilidad de otras personas que pueden ventilar sus reclamos, si lo desean, mediante litigación ordinaria. Íd. Nótese, además, que el procedimiento de adjudicación ante D.A.Co. debe culminar dentro del plazo de ciento veinte días laborables desde la presentación de la querella, teniendo el consumidor que acudir al tribunal para buscar un remedio en caso de dilación injustificada por parte de la referida agencia. 3 L.P.R.A. secs. 341i-1 y 341i-2. Es decir, el objetivo que persigue el esquema administrado por D.A.Co. tiene como corolario necesario la pronta tramitación de la querella del consumidor; claro está, sin dejar de brindarles a los querellados todas las garantías del debido proceso de ley. *Rodríguez v. Tribunal Superior*, supra.

En conclusión, D.A.Co. fue creado como un foro especializado para dilucidar y adjudicar los derechos del consumidor de manera ágil, sencilla y económica. Ahora bien, la Ley Núm. 5 no define quién constituye un *consumidor* para efectos de la protección provista por dicha legislación. Sin embargo, según surge del Reglamento de Procedimientos Administrativos de D.A.Co., el término *consumidor* incluye a "[t]oda persona natural, *que adquiere o utiliza productos o servicios como destinatario final*. Incluye toda otra persona, asociación o entidad que por designación de ley está facultado para presentar su reclamación en el Departamento". (Énfasis suplido.)(3) Re-

---

(3) Es menester señalar que la referida interpretación que el Departamento de Asuntos del Consumidor (D.A.Co.) hace de su ley habilitadora fue promulgada como una regla legislativa, conforme con la autoridad conferida por la Asamblea Legislativa —3 L.P.R.A. secs. 341(e)(g) y 341(g)— y, además, está acorde con el propósito legislativo de proteger al consumidor desvalido e indefenso, y no al comerciante.

gla 4(d) del Reglamento Núm. 6219 del Departamento de Asuntos del Consumidor de 18 de noviembre de 2000. Por sus propios términos, esta definición excluye a cualquier persona o entidad que adquiere bienes o servicios con motivo de lucrarse en una posterior reventa. Principio análogo revisten otras legislaciones protectoras del consumidor que son administradas por D.A.Co., en las cuales se especifica que el sujeto amparado por el estatuto es el destinatario final del producto o servicio.[4]

Como resultado de lo anterior, una persona o entidad que no pueda ser catalogada como un consumidor, dentro de los hechos particulares del caso y según el estado de derecho vigente, no podría presentar una querella ante D.A.Co., pues éste carecería de jurisdicción para dilucidarla. Véase *P.R. Amer. Ins. Co. v. P.R. Park. System*, 108 D.P.R. 106 (1978). Conforme hemos expresado:

> [U]na agencia administrativa no puede asumir jurisdicción sobre situación alguna que no esté autorizada por ley; es decir, ni la necesidad, ni la utilidad, ni la conveniencia pueden sustituir al estatuto en cuanto a fuente de poder de una agencia administrativa. (Énfasis suprimido.) *Raimundi v. Productora*, 162 D.P.R. 215, 225 (2004).

Vista esta exposición de derecho, veamos los hechos particulares de este caso.

## IV

Los esposos Martínez-Rosa presentaron una querella ante D.A.Co. Alegaron que el señor Rosado Santoni no había cumplido con el contrato de obra suscrito por las

---

Habida cuenta de que estamos ante una regla legislativa válidamente promulgada por la agencia, ésta tiene el mismo efecto vinculante que una ley. *Asociación Maestros v. Comisión*, 159 D.P.R. 81 (2003). Véase, además, 1 *Pierce, Administrative Law Treatise* Sec. 6.4, págs. 324–332 (4ta ed. 2002).

[4] Véanse, por ejemplo: Art. 2 de la Ley de Garantías de Vehículos de Motor, 10 L.P.R.A. sec. 2052(i); Art. 2 de la Ley Complementaria de Garantías de Vehículos de Motor, 10 L.P.R.A. sec. 2067(g); Art. 2 de la Ley de Rotulación de Productos Textiles de Puerto Rico, 10 L.P.R.A. sec. 2152(*l*); Art. 3 de la Ley para la Prevención del Fraude en el Telemercadeo, 10 L.P.R.A. sec. 4031(1).

partes. De acuerdo con este contrato, el contratista Rosado Santoni se obligó a levantar una estructura que sería dedicada a vivienda y a suministrar los materiales necesarios para la construcción. Dicha edificación, además, debía obedecer a las especificaciones, el tamaño y la calidad establecidos en los planos de construcción aprobados.

Para dilucidar la controversia, D.A.Co. celebró dos vistas en las cuales se presentó prueba documental y testifical. Según la prueba pericial presentada por el matrimonio Martínez-Rosa, la cual no fue controvertida, las zapatas de la estructura erigida por el señor Rosado Santoni no soportaban tres mil libras de presión por pulgada cuadrada, conforme lo requerían los planos de construcción aprobados, razón por la cual los elementos estructurales debían demolerse para ser construidos nuevamente. El señor Rosado Santoni, por su parte, se limitó a alegar que, de haber algún defecto, éste se debió al hormigón utilizado, por lo que era Macro Mix, Inc. la responsable. El matrimonio Martínez-Rosa se opuso; adujo que la persona responsable ante ellos era el contratista y que la inclusión de Macro Mix, Inc. sólo retrasaría los procedimientos innecesariamente. En vista de lo anterior, el foro administrativo determinó que el señor Rosado Santoni no satisfizo la obligación pactada, ya que la construcción que realizó no cumplió con los parámetros exigidos en los planos de construcción aprobados. Dicha conclusión fue sostenida por el Tribunal de Apelaciones. Declinamos intervenir con ésta.

El contratista de una obra está obligado a ejecutarla conforme a lo convenido en el contrato y en atención a las reglas del arte de la construcción y a los usos o reglas profesionales. M.A. Del Arco y M. Pons, *Derecho de la Construcción*, 2da ed., Madrid, Ed. Hesperia, 1980, pág. 40. Si lo ejecutado resulta de calidad inferior o presenta defectos, es indudable que el contratista no ha cumplido con su obligación. Íd., pág. 41. Ello descansa en el principio de que el contratista no solamente se obliga a realizar la obra, *sino también a realizarla bien. Constructora Bauzá, Inc. v. García López*, 129 D.P.R. 579 (1991). La utilización

de materiales inadecuados o defectuosos, así como la ejecución defectuosa de los trabajos de construcción, constituyen vicios de la construcción de los cuales debe responder el contratista ante el dueño de la obra. M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1986, T. XX, Vol. 2, págs. 298–299; J.M. Manresa y Navarro, *Comentarios al Código Civil español*, 6ta ed. rev., Madrid, Ed. Reus, 1969, T. X, Vol. II, pág. 710.

Ahora bien, la divergencia de criterios entre D.A.Co. y el Tribunal de Apelaciones se manifestó en cuanto a la necesidad de incluir a Macro Mix, Inc. como parte de la querella. Según D.A.Co., una vez determinado que el contratista Rosado Santoni incumplió con su obligación de construir la obra pactada —por lo tanto, le responde al matrimonio Martínez-Rosa— culminó el trámite administrativo ante dicha agencia sin necesidad de dilucidar una controversia entre comerciantes sobre la cual carece de jurisdicción. Sin embargo, el Tribunal de Apelaciones entendió que D.A.Co. tenía que celebrar una vista para resolver si Macro Mix, Inc. fue negligente en el cumplimiento de su obligación con el señor Rosado Santoni y cuánto debe compensarle a este último, en caso de contestar dicha interrogante en la afirmativa. Según expuso el tribunal apelativo en reconsideración, el señor Rosado Santoni es un consumidor en relación con Macro Mix, Inc. Incidió el foro apelativo intermedio en su razonamiento. Nos explicamos.

El matrimonio Martínez-Rosa inició este procedimiento de adjudicación contra el señor Rosado Santoni por incumplimiento contractual. En ese sentido, estamos ante una querella presentada por un consumidor afectado por el servicio provisto por un contratista. Sin lugar a dudas, D.A.Co. tenía jurisdicción para dilucidar esta controversia, pues fue esa la intención del legislador al crear el mencionado foro administrativo. Sin embargo, no podemos llegar a igual conclusión con relación a la posible reclamación que pueda tener el señor Rosado Santoni contra Ma-

cro Mix, Inc. Resulta que, contrario a lo resuelto por el Tribunal de Apelaciones, un contratista no es un consumidor que pueda aprovechar el esquema administrativo de D.A.Co. para vindicar sus derechos frente a terceros. Es decir, se trata de una controversia que no afecta consumidor alguno, en vista de que al verdadero consumidor en este caso, el matrimonio Martínez-Rosa, se le proveyó el remedio solicitado sin necesidad de entrar a considerar esta disputa.

El contratista no es la persona que adquiere bienes o servicios como destinatario final, sino que los utiliza para producir un resultado con ánimo de lucro, ya que cobra por éste al destinatario final del producto, el dueño de la obra. Tampoco se trata del consumidor inexperto, desvalido e indefenso al cual respondió la creación de D.A.Co. Todo lo contrario. El contratista debe conocer el arte de su oficio y dominar con destreza las prácticas de la construcción y la utilización de los materiales. En fin, no estamos ante el sujeto protegido por la Ley Núm. 5 y demás legislación administrada por D.A.Co.(5) Si aváláramos la interpretación del Tribunal de Apelaciones, sería inimaginable el alcance de la jurisdicción de D.A.Co., pues prácticamente todos los comerciantes y manufactureros podrían ser catalogados como consumidores en relación con sus respectivos suplidores. Nada más lejos del propósito legislativo que inspiró la creación de D.A.Co.

De acuerdo con lo expresado, una vez D.A.Co. adjudicó los planteamientos presentados por el consumidor —en este caso, el matrimonio Martínez-Rosa— no podía sujetarlo indefinidamente a un trámite administrativo para dilucidar una controversia sobre la cual carece de jurisdicción. Lo contrario resultaría en el desvío de los recursos y esfuerzos que la Asamblea Legislativa reservó para proteger a los consumidores e implicaría la asunción

---

(5) De hecho, el contratista está sujeto a diversa reglamentación promulgada por D.A.Co. en defensa, precisamente, del consumidor de sus servicios. Véase, por ejemplo, el Reglamento para el Registro de Contratistas, Reglamento Núm. 5496 de 22 de octubre de 1996.

de jurisdicción sobre una situación que no está considerada en la Ley Núm. 5 ni en su historial legislativo. El señor Rosado Santoni, de entenderlo necesario, puede presentar ante los tribunales cualquier reclamación que pueda tener contra Macro Mix, Inc.

## V

Por los fundamentos que anteceden, *se revoca la sentencia emitida por el Tribunal de Apelaciones y, por consiguiente, se confirma la resolución emitida por el Departamento de Asuntos del Consumidor.*

*Se dictará Sentencia de conformidad.*

La Juez Asociada Seora Fiol Matta se inhibió.