# 2009 DTA 73

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

ANA BALSEIRO GONZÁLEZ
Recurrida

v.

AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO
Recurrente

Núm. KLRA-2008-01629

San Juan, Puerto Rico, a 30 de abril de 2009

Panel integrado por su Presidente, el Juez Ramírez Nazario,
y los Jueces Piñero González y Morales Rodríguez

Ramírez Nazario, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece la Autoridad de Acueductos y Alcantarillados de Puerto Rico (en lo sucesivo, AAA) y nos solicita que revisemos una resolución emitida por la Oficina de Apelaciones el 17 de noviembre de 2008 (notificada el 18 del mismo mes y año). Mediante tal Resolución, la Oficina de Apelaciones modificó la medida disciplinaria de destitución de empleo impuesta a la señora Ana Balseiro González (en lo sucesivo, señora Balseiro), por una suspensión de empleo y sueldo por veinte días.

Contando con la comparecencia de las partes y con el derecho aplicable, procedemos a confirmar la resolución recurrida.

### I

La señora Balseiro es empleada de carrera de la AAA desde el 1983. En el 2006 fue trasladada a la División de Planes Médicos y Seguros de la AAA (en lo sucesivo, División), bajo la supervisión del señor Eddie López Santini. Para esa fecha en la División trabajaban cuatro personas, entre ellas, el señor López quien fungía como director o supervisor. Estas cuatro personas, tenían que registrar su asistencia en tarjetas. Para ello, utilizaban un reloj ponchador.

Los lunes, cada empleado era responsable de firmar y entregar la tarjeta correspondiente a la semana anterior a la señora Balseiro para que ésta a su vez la entregara al señor López para su firma. Si la tarjeta contenía algún descuento, la misma tenía que estar acompañada del formulario correspondiente, que también debía firmar el supervisor. La señora Balseiro también era la encargada de entregar las tarjetas de asistencia a la Oficina de Recursos Humanos. En la División existía un archivo en donde se guardaban copias de las tarjetas de asistencia, luego que se entregaban las originales a Recursos Humanos.

El señor López, después de recibir información sobre unas alteraciones en la tarjeta de asistencia de la señora Balseiro, para la semana del 29 de octubre al 4 de noviembre de 2006, decidió revisar la original. Esta tarjeta reflejó que se habían hecho alteraciones con tinta correctora en los días 2 y 3 de noviembre de 2006. Al señor López le constaba que la señora Balseiro había estado ausente un tiempo el 2 de noviembre y durante todo el día el 3 de noviembre de 2006. El 2 de noviembre, la señora Balseiro alteró la hora de salida, escribió las 4:00 P.M. aunque se ausentó a las 3:00 P.M. El día 3 de noviembre, ella escribió 7:30 A.M. a 11:30 A.M. y 12:30 P. M. a 4:00 P.M., aún cuando había estado ausente todo el día.

Ante este hallazgo, el señor López le solicitó a la señora Balseiro copia de todas las tarjetas de asistencia de los empleados de la División. De la investigación realizada por el señor López, se desprende que las tarjetas correspondientes a las semanas 2 al 8 de julio de 2006 y del 24 al 30 de septiembre de 2006 también estaban alteradas. En la tarjeta que corresponde a la semana del 2 al 8 de julio, la señora Balseiro estuvo ausente y escribió la palabra presente. Para la semana del 24 al 30 de septiembre, en los días 25, 28 y 29 aparecieron alteraciones en las horas de entrada y salida.

Este asunto fue referido al señor Edwin Rivera Cardona, especialista de Recursos Humanos. Éste realizó una investigación. Como parte de tal investigación citó a la señora Balseiro, pero ésta no compareció ni se excusó. También citó y entrevistó al señor López.

Posteriormente, la AAA le imputó a la señora Balseiro violaciones al Artículo 9.1 del Reglamento de Normas de Conducta y Medidas Disciplinarias de la AAA (en lo sucesivo, Reglamento de Normas). En específico, se le imputó una violación de Grupo III (Registro de Asistencia Indebido) y dos faltas de Grupo V (Apropiación Ilegal y Falsificar y Sustraer Documentos). Además, se le aplicó el Artículo 10.2 de Procedimiento Sumario, Inciso 1(B) y el Artículo 11 de Acumulación de Faltas.

Así, el 16 de febrero de 2007, la AAA notificó a la señora Balseiro su intención de destituirla sumariamente. Además, le apercibió de su derecho a solicitar una vista informal previo a decretarse la suspensión o destitución. A tales efectos, se celebró una vista informal el 26 de julio de 2007. Luego de la celebración de la vista, mediante carta de 30 de abril de 2008, la AAA le informó que se reafirmaba en la acción disciplinaria de destituirla sumariamente. La señora Balseiro fue destituida el 5 de mayo de 2008. Oportunamente, ésta presentó apelación ante la Oficina de Apelaciones de la AAA. La vista administrativa formal se celebró el 10 de octubre de 2008.

Cabe resaltar que la señora Balseiro, al principio del procedimiento, alegó que el señor López la hostigaba y la autorizó a cometer estos actos. Sin embargo, ésta nunca se quejó formalmente en contra del señor López. Además, en 30 años de servicio, el señor López nunca fue objeto de una querella en su contra. Posteriormente, la señora Balseiro cambió su teoría inicial para aceptar en la vista formal, que cometió los hechos imputados. En fin, la señora Balseiro admitió que las tachaduras y alteraciones en sus tarjetas fueron realizadas por ella. Por otro lado, el señor Evaristo Álvarez, perito calígrafo de la AAA, declaró en la vista formal que la señora Balseiro fue la persona que firmó y escribió las palabras y números identificados en las tarjetas de asistencia alteradas.

Surge de la prueba que con anterioridad a estos hechos, la señora Balseiro no había recibido advertencias sobre errores en las tarjetas de asistencia ni había sido objeto de medidas disciplinarias. De su historial se desprende, que era una empleada de mucha experiencia, que sabía realizar su trabajo y nunca la AAA había tenido quejas de ella.

Ahora bien, la controversia que tuvo ante sí la Oficina de Apelaciones fue determinar si la señora Balseiro incurrió en violación a la falta tipificada como Registro de Asistencia Indebida (que contempla una suspensión como primera ofensa) y si se le podía imputar, además, por los mismos hechos, otras violaciones como Apropiación Ilegal y Falsificar o Sustraer Documentos (que conllevan la destitución como medida disciplinaria).

La Oficina de Apelaciones determinó que las acciones de falsificar, alterar o el escribir información falsa en las tarjetas de asistencia están incluidas en la falta tipificada como Registro de Asistencia Indebida, violación de Grupo III. Estas violaciones o faltas al Grupo III contemplan suspensiones de empleo y sueldo en la primera y segunda ofensa. Concluyó la Oficina de Apelaciones:

*"En resumen, la actuación de la apelante (aunque podía estar comprendida en el lenguaje de las otras dos violaciones imputadas, supra, que conllevan su destitución) fue tipificada por el reglamento como un Registro de Asistencia Indebido que en la primera ofensa conlleva una suspensión de empleo y sueldo con un máximo de veinte (20) días. La única interpretación sensata y justa del Reglamento es que la violación en este caso de la señora Balseiro fue cubierta expresamente por el Grupo III y no puede contemplar violaciones al Grupo V. Por lo tanto, bajo cualquier alternativa, la misma sólo conlleva una suspensión de empleo y sueldo."*

Así, la Oficina de Apelaciones encontró que la señora Balseiro incurrió en conducta impropia y modificó la sanción impuesta de destitución, a una suspensión de empleo y sueldo por veinte días. Además, le ordenó desembolsar el dinero, más sus intereses, de los días y horas que no trabajó.

## II

Inconforme con esta decisión, recurre ante nos la AAA y plantea los siguientes señalamientos de error:

*"1. ERRÓ LA HONORABLE OFICINA DE APELACIONES AL NO CONFIRMAR LA DESTITUCIÓN SUMARIA DE LA RECURRIDA, AUN CUANDO DETERMINÓ QUE ÉSTA INCURRIÓ EN FALSIFICAR LAS TARJETAS DE ASISTENCIA CON EL PROPÓSITO DE APROPIARSE DE SUS DÍAS DE VACACIONES Y POR CONSIGUIENTE DE DINERO QUE NO LE PERTENECÍA, ACCIÓN QUE ES SANCIONADA CON DESTITUCIÓN POR EL REGLAMENTO DE NORMAS DE CONDUCTA Y MEDIDAS DISCIPLINARIAS.*

*2. ERRÓ LA HONORABLE OFICINA DE APELACIONES AL NO APLICAR LAS SANCIONES CORRESPONDIENTES SEGÚN EL REGLAMENTO DE NORMAS DE CONDUCTA Y MEDIDAS DISCIPLINARIAS.*

*3. ERRÓ LA HONORABLE OFICINA DE APELACIONES AL CONCLUIR QUE LA RECURRIDA NO INCURRIÓ EN EL RESTO DE LAS FALTAS IMPUTADAS."*

## III

### A

La revisión judicial de las decisiones administrativas tiene como propósito fundamental el delimitar la discreción de los organismos administrativos y velar porque sus actuaciones sean conformes a la ley dentro del marco ·del poder delegado. *Empresas Ferrer v. ARPE*, 172 D.P.R. \_\_\_, **2007 J.T.S. 181**; *Misión Ind. P.R. v. J. P.*, 146 D.P.R. 64, 129 (1998).

Es norma reiterada en nuestra jurisdicción que las decisiones de las agencias administrativas gozarán de gran deferencia y de una presunción de regularidad y corrección la cual debe ser respetada, mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. *Misión Ind. P.R. v. J.P., supra*. Los tribunales deben ser cautelosos al intervenir con las determinaciones de los organismos administrativos y ser deferentes con ellos. Art. 4.5 Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. § 2175 *Rivera Concepción v. A. R.P.E.*, 152 D.P.R. 116, 122 (2000) El Tribunal Supremo ha reiterado que las decisiones de los organismos administrativos merecen la mayor deferencia judicial por razón del conocimiento especializado y la experiencia en cuanto a los asuntos que les son encomendados. Al revisar una decisión administrativa, el criterio rector será la razonabilidad en la actuación de la agencia. *Otero Mercado v. Toyota de Puerto Rico*, 163 D.P.R. 716, 727-728 (2005)

La deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo ha errado en la aplicación o interpretación de las leyes o reglamentos, cuando ha mediado una actuación arbitraria, irrazonable o ilegal, o cuando la actuación administrativa lesiona derechos constitucionales fundamentales. *Otero Mercado v. Toyota, supra*, a la página 729.

El alcance de la revisión judicial comprende tres áreas. Ellas son: (1) la concesión del remedio apropiado, (2) la revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial, y (3) la revisión completa y absoluta de las conclusiones de derecho. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. ed., Bogotá, Forum, 2001, pág. 534.

La Ley de Procedimiento Administrativo Uniforme dispone que *"las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo"*. 3 L.P.R.A. § 2175. La evidencia sustancial según ha sido definida *"es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"*. *Otero v. Toyota, supra,* a la pág. 728; *Misión Ind. P.R. v. J.P., supra,* a la página 131. Determinaciones en cuanto a testimonios y la deducción de hechos establecidos en la vista le corresponden al organismo adjudicador, por lo que el tribunal revisor no debe pasar juicio sobre la credibilidad de testigos o evaluar la evidencia, sino que se limitará a tomar el récord en su totalidad, para determinar si contiene evidencia sustancial que sostenga las conclusiones de la agencia. *Otero v. Toyota, supra,* a la página 731.

La parte afectada por una determinación de hecho de una agencia debe, en primer lugar, *"demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración"*. *Otero v. Toyota, supra,* a la página 728; *Misión Ind. P. R. v. J.P., supra,* a la página 131. Si la parte afectada no demuestra la existencia de otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor. *Ramírez Rivera v. Depto. de Salud,* 147 D.P.R. 901, 905 (1999) *"El fin primordial de esta norma es evitar que el criterio de la agencia administrativa en materia especializada sea sustituido por el criterio del tribunal revisor."* *Oficina de Ética Gubernamental v. Rodríguez,* 159 D.P.R. 98, 118 (2003).

Las conclusiones de derecho de la agencia, distinto de las determinaciones de hechos, pueden ser revisadas en todos sus aspectos por el tribunal, sin sujeción a norma o criterio alguno. Art. 4.5, Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. § 2175. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, se ha reiterado consistentemente que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos. *Otero v. Toyota, supra,* pag. 727; *Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico,* 151 D.P.R. 269, 282 (2000).

Un dictamen se considera arbitrario y caprichoso si: la agencia descansó en factores que la Asamblea Legislativa no intentó considerar; cuando no considera un aspecto importante de la controversia; cuando la explicación de la decisión de la agencia contradice la evidencia presentada ante la agencia; o si la interpretación es tan poco plausible que no puede entenderse como producto de la especialización de la agencia. *Padín Medina v. Administración de los Sistemas de Retiro,* **2007 J.T.S. 151**.

Todo lo antes expuesto le impone al que impugna una decisión administrativa el deber de probar que se ha actuado en forma arbitraria, caprichosa o en clara violación de los derechos constitucionales fundamentales y de establecer, además, que en su recurso no existe base racional que sostenga la decisión administrativa que es objeto de impugnación.

En cuanto a la apreciación de la prueba, es nuestra obligación respetar la apreciación de la agencia en cuanto a la credibilidad de los testigos. *Hilton Hotels Internationals v. Junta de Salario Mínimo,* 74 D.P.R. 670, 687 (1953). No debemos perder de vista que la determinación en cuanto al testimonio y la deducción de hechos establecidos en la vista le corresponde al organismo adjudicador, por lo que este tribunal no debe pasar sobre la credibilidad del testigo o repesar la evidencia, sino que se limitará a tomar el récord en su totalidad para determinar si contiene evidencia sustancial que sostenga las conclusiones de la agencia. *J.R.T. v. Línea Suprema Inc., 89 D.P.R. 840 (1964).*

**B**

Por otro lado, el Reglamento de Normas de Conducta y Medidas Disciplinarias, el cual aplica a todos los

empleados de la AAA, en el Artículo 9.1 establece las acciones que están sujetas a medidas correctivas o disciplinarias, así como las sanciones a imponerse. Estas acciones o faltas están divididas por grupos según la medida disciplinaria que conlleva la falta. En el Grupo III se estatuye como una falta disciplinaria el Registro de Asistencia Indebida. Ésta se define por el Reglamento de Normas como: *"registrar la información de asistencia de otro empleado o solicitar que alguien lo haga. Falsificar, alterar o poner información falsa en los registros de asistencia."*

Las faltas clasificadas como de Grupo III conllevan como sanción disciplinaria para la primera ofensa la suspensión de empleo y sueldo de 16 a 20 días. En segundas ofensas, la sanción a imponerse es la suspensión de empleo y sueldo de 21 a 25 días. Cuando se comete una tercera ofensa de Grupo III, la medida disciplinaria a aplicarse es la destitución.

Asimismo, el referido Reglamento de Normas tipifica como una acción sujeta a medida disciplinaria de Grupo V el Falsificar o Sustraer Documentos. Tal falta se define como: *"ofrecer información falsa o fraudulenta, omitir información, alterar, falsificar o sustraer documentos sometidos a la Autoridad para fines oficiales o en documentos oficiales de la Autoridad."* Las faltas clasificadas de Grupo V, conllevan la destitución del empleo como sanción en la primera ofensa.

Igualmente, el Reglamento de Normas tipifica como falta de Grupo V la Apropiación Ilegal. La Apropiación Ilegal está definida como el: *"usar, manejar, apropiarse ilegal o manejar indebidamente, hurtar o robar dinero, propiedad, equipo, materiales, bienes, servicios, documentos y otros a la Autoridad, compañeros de trabajo, ciudadanos, instituciones públicas o privadas y otros."* Como es una falta de Grupo V la medida disciplinaria a imponerse en la primera ofensa es la destitución del empleo.

Por su parte, el Artículo 10.2 del citado Reglamento establece lo referente al procedimiento sumario. En lo que concierne al caso ante nos dispone que:

*"El director podrá suspender de empleo y no de sueldo o suspender de empleo y sueldo o destituir antes de la vista informal, al notificarle la formulación de cargos en cualquiera, pero no limitado, de los siguientes casos:*

*(b) apropiación, uso indebido de fondos o bienes, propiedades, servicios de la Autoridad o cuando por disposición de ley el director venga obligado a informar de los hechos al secretario de justicia o cualquier otra autoridad competente."*

Por otro lado, el Artículo 11 del referido Reglamento de Normas dispone lo concerniente a la Acumulación de faltas. El mismo lee como sigue:

*"La comisión por parte del empleado de diferentes faltas sujetas a medidas correctivas o disciplinarias, que no sean la repetición de la misma falta dentro de los períodos de prescripción que se establece en el Artículo 12, se considerará evidencia de que el empleado no puede adaptarse a las reglas y normas de conducta de la Autoridad y que debe separarse del empleo."*

El citado articulado hay que leerlo en unión al Artículo 12 que trata acerca del período de prescripción para la acumulación de faltas. El Artículo 12 estatuye que para los efectos de determinar la acumulación de faltas se establecen los siguientes períodos de prescripción:

*"(1) "un año para aquellas faltas que hayan sido sancionadas con amonestación y para las ausencias y tardanzas no justificadas; y*

*(2) tres años para toda otra falta."*

A la luz del derecho expuesto, pasemos a analizar la controversia del caso de epígrafe.

## IV

Por estar estrechamente relacionados, atenderemos los tres errores señalados en conjunto. En su recurso de revisión, la AAA aduce que el foro administrativo enmendó el Reglamento de Normas al disponer de este caso. Entiende la AAA que la prueba documental y testifical demuestran que la señora Balseiro alteró y falsificó las tarjetas de asistencia para los días 5 de julio, 25, 28 y 29 de septiembre y 2 y 3 de noviembre de 2006. Agrega, que ese hecho constituyó una violación a tres reglas de conducta del Reglamento de Normas, dos de las cuales conllevan la destitución como sanción en la primera ofensa.

La AAA alega, además, que aunque la definición de apropiación ilegal no incluye expresamente el caso de las tarjetas, tampoco lo excluye. Añade que las tarjetas de asistencia son documentos oficiales de la AAA y que al alterar su contenido, la señora Balseiro cometió la falta tipificada como Falsificar o Sustraer Documentos. Por último, señala que como la señora Balseiro admitió que alteró y falsificó en 6 ocasiones sus tarjetas de asistencia, la Oficina de Apelaciones tenía que concluir que ésta violó en 6 ocasiones distintas la falta tipificada como Registro de Asistencia Indebido. Sostiene la AAA que la Oficina de Apelaciones actuó irrazonablemente al concluir que no procedía la destitución de la señora Balseiro.

Por el contrario, la señora Balseiro contiende que no es correcto que con sus actuaciones haya cometido tres faltas distintas. Argumenta que hay una norma sobre Registro de Asistencia Indebido que sanciona propiamente la conducta imputada, y que requeriría de tres ofensas a esta norma para que se le pueda aplicar la severa sanción de destitución. Entiende, además, que el intentar aplicarle las faltas de Apropiación Ilegal y Falsificar o Sustraer Documentos es forzar la interpretación de dos reglas que no se tipificaron ni redactaron con el propósito de sancionar la alteración de tarjetas de asistencia. Finaliza, señalando que la única falta aplicable a los hechos que se le imputan es la de Registro de Asistencia Indebido.

La controversia en este caso surge precisamente porque, por los mismos hechos, se le imputó a la señora Balseiro una violación al Grupo III y dos violaciones al Grupo V del Reglamento de Normas. Éstas dos últimas violaciones son las únicas que dan lugar a que la señora Balseiro fuese destituida.

Luego de analizar la prueba que se le presentó y de interpretar el Reglamento de Normas, la Oficina de Apelaciones concluyó que la señora Balseiro había alterado varias tarjetas de asistencia, violando así el referido Reglamento. En específico, determinó la Oficina de Apelaciones que la señora Balseiro había violado la falta tipificada como Registro de Asistencia Indebido, clasificada como una falta de Grupo III. Dispuso, además, que como los hechos cometidos estaban específicamente comprendidos en dicha falta, no le eran de aplicación las otras dos disposiciones del Reglamento de Normas que la AAA pretendió imputarle. Entendió la Oficina de Apelaciones que las disposiciones sobre apropiación ilegal y falsificación de documentos no tipifican o contemplan el caso de alteración de tarjetas de asistencia. En otras palabras, que estas dos faltas contemplan y sancionan otras conductas o situaciones. Igualmente, decidió que a la señora Balseiro no se le podía aplicar ni el Artículo 10.2 de Procedimiento Sumario, ni el Artículo 11 de Acumulación de Faltas. A estos efectos, señaló que *"ninguna de las partes, ni la jurisprudencia la sostiene, han argumentado que en este caso hubo más de una ofensa"*.

Como vimos, el Reglamento de Normas y Conducta de la AAA tipifica una serie de conductas como faltas. No cabe duda que la AAA, como patrono, tiene la potestad de adoptar Reglamentos razonables con el fin de conseguir el buen funcionamiento de la empresa. *Secretario del Trabajo v. I.T.T.*, 108 D.P.R. 536, 542 (1979). No obstante, la AAA cuestiona la interpretación que realizó la Oficina de Apelaciones del Reglamento de Normas sobre cuál era la falta aplicable a la conducta observada por la señora Balseiro. Entiende que la

determinación del foro recurrido es irrazonable y que se debió destituir a ésta, aplicando la sanción prevista para la falta de apropiación ilegal y falsificación. No nos convence.

Es importante recordar que los tribunales debemos dar gran peso o deferencia a las aplicaciones e interpretaciones de las agencies con respecto a las leyes y reglamentos que administran. Por ello, no podemos descartar libremente las conclusiones e interpretaciones de derecho que hizo la Oficina de Apelaciones, *Martínez Segarra v. Rosado Santoni*, 165 D.P.R. 582 (2005); *Hernández v. Centro Unido de Detallistas*, 168 D. P.R.____ (2006), **2006 J.T.S. 140**. Recordemos que la interpretación administrativa no tiene que ser la única que razonablemente se pueda dar al estatuto, siendo suficiente que la misma sea razonable y consistente con el propósito legislativo. De acuerdo con la doctrina aludida, en los casos marginales o dudosos, la interpretación de la agencia encargada de velar por el cumplimiento de los reglamentos merece deferencia sustancial, aun cuando no sea la única razonable.

Ahora bien, la deferencia que gozan las decisiones de las agencias por razón de su conocimiento experto cede ante una actuación irrazonable o ilegal. Este tribunal puede sustituir la interpretación de la agencia cuando no exista una base racional para explicar la decisión administrativa. Sin embargo, luego de analizar el expediente ante nuestra consideración, no encontramos que la decisión de la Oficina de Apelaciones sea una irrazonable. Su determinación de que la falta cometida fue la de Registro de Asistencia Indebida, por ésta sancionar específicamente la *conducta observada* por la señora Balseiro, nos parece razonable. Igual de razonable y proporcional nos resulta la sanción impuesta, tomando en consideración el historial previo de ésta como empleada.

Además, la AAA tampoco ha demostrado que la determinación emitida por la Oficina de Apelaciones fuese una arbitraria, ilegal o producto de un error manifiesto. Al tenor de ello, no es la función de este foro sustituir el criterio de la agencia por el judicial. No podemos perder de perspectiva que la determinación recurrida constituye la interpretación de la agencia con el *expertise* en el asunto en conflicto y la que se dedica a poner en vigor el Reglamento de Normas de la AAA. Por tanto, su interpretación merece nuestra mayor deferencia. *Martínez Segarra v. Rosado Santoni, supra; Hernández v. Centro Unido de Detallistas, supra*. Procede entonces que actuemos de manera consistente con la clara política judicial antes expuesta y, por ende, demos deferencia a la decisión arribada por la agencia que posee conocimiento especializado en la materia.

**V**

De conformidad con lo antes expresado, se confirma la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones