ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| JOSÉ TEXIDOR PÉREZ<br><br>RECURRENTE<br><br>V.<br><br>SECRETARIO DE JUSTICIA<br><br>RECURRIDOS | KLRA202400083 | *REVISIÓN ADMINISTRATIVA* procedente de Departamento de Corrección y Rehabilitación<br><br>Crim. Num.: B-1825-23<br><br>Sobre:<br><br>Reconsideración |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard, y la Jueza Díaz Rivera.

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de marzo de 2024.

Comparece, José Texidor Pérez (en lo sucesivo, "el recurrente"), mediante el recurso de epígrafe. Ello, a los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida el 18 de octubre de 2023 y notificada el 2 de noviembre de 2023, por el Departamento de Corrección y Rehabilitación (en adelante, por sus siglas "DCR"). Mediante la referida determinación, el DCR le negó al recurrente la tenencia física de dos (2) sellos de Rentas Internas.

**I.**

Surge del expediente administrativo ante nos, que el recurrente se encuentra en la Institución 501 del Complejo Correccional de Bayamón, en el cumplimiento de una pena carcelaria. La controversia que nos ocupa dio inicio el 8 de febrero de 2023. En esta fecha, según adujo el recurrente, una Oficial de Custodia le negó la posesión de dos (2) sellos de Rentas Internas valorados en la cantidad de ciento ochenta dólares ($180). Alegadamente, los referidos sellos fueron comprados por un familiar del recurrente. Posterior a la compra, dicho familiar envió al recurrente los sellos por correo postal.

Así las cosas, el 17 de octubre de 2023, el recurrente presentó ante el DCR una "*Solicitud de Remedio Administratrivo.*" En esencia, reiteró su solicitud sobre la entrega de los dos (2) sellos de Rentas Internas. Posteriormente, el 2 de noviembre de 2023, el DCR notificó una "*Respuesta al Miembro de la Población Correcional.*" Mediante esta, negó al recurrente la tenencia de los aludidos sellos. Ello, bajo el fundamento de que son sellos que se utilizan para presentar recursos legales al foro judicial, los cuales se le harán disponibles al recurrente al momento en que vaya a radicar algún escrito en el tribunal. En reacción, el 7 de noviembre de 2023, el recurrente presentó "*Solicitud de Reconsideración.*" En síntesis, reprodujo los planteamientos esbozados en su petición anterior.

En atención a ello, el 2 de enero de 2024, el DCR notificó una determinación intitulada: "*Respuesta de Reconsideración al Miembro de la Población Correccional.*" Mediante esta, denegó la "*Solicitud de Reconsideración.*" Dicho foro, reiteró al recurrente que los sellos serían custodiados hasta el momento en que necesitara colocarlos en algun documento legal. Añadió como fundamento jurídico, que el superintendente tenía la discreción de tomar determinaciones respecto a la posesión de propiedad cuyo valor exceda la cantidad de veinticinco dólares ($25).

Inconforme, el 19 de enero de 2024, el recurrente presentó ante nos el recurso de epígrafe. Mediante este, señaló como error lo siguiente:

> Suplico a este Honorable Tribunal ya que se me ha denegado el derecho a una defensa adecuada, ha poder llevar el caso en alzada ante su consideración y en vista que no hay Reglamento que impida tener los sellos, no es razón justificable que impida se me entregue los sellos.

**II.**

A**. Deferencia a las decisiones administrativas**

Sabido es que la revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que éstas desempeñen sus funciones conforme a la ley. *García Reyes v.*

*Cruz Auto Corp.*, 173 DPR 870, 891 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias administrativas debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Asoc. Fcias. v. Caribe Specialty et al. II.,* 179 DPR 923, 940 (2010); véanse también, *Martínez v. Rosado,* 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003).

Ahora bien, nuestro Tribunal Supremo ha reiterado que la deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder, solamente, cuando la misma no esté basada en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012); véanse también, *Torres Santiago v. Depto. Justicia,* 181 DPR 869 (2011); *Asoc. Fcias. v. Caribe Specialty et al. II*, supra; *Otero v. Toyota*, supra.

En este ejercicio, nuestro Más Alto Foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006); *véanse también*, *Otero v. Toyota*, supra; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 DPR 521, 532 (1993).

**B. Reglamentos atienentes a la correspondencia y propiedad de los miembros de la población correccional**

El *Reglamento de Normas para Regir la Correspondencia de los Miembros de la Población Correccional en Instituciones Correccionales y Programas de la Administración de Corrección*, establece en su Art. V., que los confinados tendrán derecho a recibir y enviar comunicaciones escritas. Reglamento Núm. 7594, Departamento

de Estado, 24 de octubre de 2008. Ahora bien, dicho derecho tiene ciertas limitaciones reglamentarias. En vista de ello, se le podrá limitar a los confinados el recibo y envío de correspondecia, por razones de seguridad, mal comportamiento o clasificación. *Íd.* Asimismo, la correspondencia que reciba un recluso será objeto de monitoreo e inspección, según lo permitan las normas de respeto y confidencialidad establecidas. *Íd.* A tenor de ello en el Art. VIII del referido Reglamento se dispone, entre otras cosas, que "[c]ada institución establecerá procedimientos para el manejo y monitoreo de la correspondencia…"

De otra parte, el Art. II del *Reglamento Interno de Normas y Limitaciones sobre Propiedad Personal de Confinados* del 30 de dieciembre de 2004, según enmendado, tiene el propósito de establecer "guías para la retención, manejo y disposición de la propiedad personal de los confinados en las instituciones correccionales." Asimismo, en el referido artículo se establece como política de la Administración de Corrección lo siguiente:

> [L]os confinados sólo podrán tener en su posesión aquella propiedad que le ha sido autorizada a retener al momento de su ingreso, la que le es provista mientras está encarcelado. También la propiedad que adquiere en la Comisaría de la institución o que ha sido autorizada a recibirse por correo o mediante entrega durante horas de visita de conformidad con las normas institucionales. Art. II, *supra.*

Cónsono con ello, un confinado solo podrá tener bajo su posesión la propiedad personal que: a) se le haya autorizado a retener a su ingreso a la institución correccional; b) aquella propiedad que se le haya provisto por la institución durante la estadía en prisión; c) la propiedad que haya sido adquirida mendiante compra en la Comisaría de la Institución; d) aquella propiedad que se le haya autorizado a recibir por correo, de conformidad con lo dispuesto en los reglamentos y las normas intitucionales; y e) la propiedad que haya sido autorizada por los funcionarios de la institución. Art. VI, *supra*. Cabe destacar, que este reglamento añade que "[b]ajo ninguna circunstacia se permitirá la posesión de propiedad personal en exceso de los límites establecidos en

estas normas…" *Íd.* Entre los referidos límites impuestos a la Población Correccional se encuentran los relacionados al valor de la propiedad que se puede poseer. Particularmente, las disposisciones regalmentarias "**prohíben el que se apruebe la posesión de cualquier artículo cuyo valor exceda los veinticinco dólares**. Cualquier autorización que exceda este límite de veinticinco dólares ($25) **será aprobada por escrito por el superintendente**." (Énfasis nuestro). Art. X, *supra.*

**III.**

Como fue expuesto, el recurrente reclama a los Oficiales Correcionales del DCR la entrega de dos (2) sellos de Rentas Internas valorados en la cantidad de ciento ochenta dólares ($180). Luego de evaluar en su totalidad el expediente administrativo ante nos, concluimos confirmar la derminación del DCR.

El derecho de los confinados a tener propiedad personal no es absoluto. En general, tanto la propiedad que un recluso puede recibir por correo postal, como la propiedad que podrá retener en su área de vivienda, estará limitada a la autorización correspondiente. De igual manera, existen limitaciones particulares de cantidad y valor monetario para los objetos que un confinado pueda poseer. En lo atinente, el recurrente solicita la tenencia física de unos sellos que exceden la cuantía de veinticinco dólares (25). En este tipo de casos, la posesión solo puede ser autorizada por el consentimiento escrito del superintendente. Por tanto, no le asiste la razón al recurrente al solicitar la tenencia automática de los sellos en cuestión. Ello, dado que, para poder mantener los sellos en su àrea de vivienda, la reglamentación aplicable, requiere dicha aprobación del superintendente.

De otra parte, cabe destacar que el DCR no le está negando al recurrente el uso de los sellos de Rentas Internas. Solo prohibieron que los referidos sellos estuvieran en su área de vivienda. Siendo así, el recurrente podrá utilizar dichos sellos en el momento en que los vaya a adherir en algún documento. Por lo cual, el DCR no le está violentando al

recurrente algun derecho relacionado a la presentación de recursos legales. A su vez, reiteramos que el DCR es la agencia que tiene el conocimiento especializado para el manejo de la convivencia y seguridad de la población correccional. Sus decisiones se presumen correctas. En esta controversia, el recurrente no derrotó la referida presunción. Por consiguiente, *confirmamos* el dictamen recurrido.

**IV.**

Por todos los fundamentos anteriormente discutidos, se dicta *Sentencia* mendiante la cual se confirma la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Candelaria disiente por considerar que este Tribunal carece de jurisdicción para revisar una mera respuesta, pues contrario a la Resolución que emite el Coordinador luego de acoger una reconsideración, no constituye la decisión final de la agencia.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones