PANEL ESPECIAL (I)

| | | |
|---|---|---|
| YVETTE GONZÁLEZ CUASCUT<br><br>Querellante-Recurrente<br><br>v.<br><br>CONSEJO DE TITULARES Y JUNTA DE DIRECTORES DEL CONDOMINIO ESTANCIAS DE ARAGÓN, LUIS R. SÁNCHEZ PERAZA-PRESIDENTE<br><br>Querellados-Recurridos | KLRA202500259 | RECURSO DE REVISIÓN procedente del Departamento de Asuntos del Consumidor, Oficina Regional de Ponce<br><br>Querella núm.: C-PON-2022-0003373<br><br>Sobre: Ley de Condominios (Ley núm. 129 del 16 de agosto de 2020) |

Panel integrado por su presidente el juez Sánchez Ramos, el juez Salgado Schwarz y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 5 de agosto de 2025.

Comparece ante este tribunal apelativo, la Sra. Yvette González Cuascut (señora González Cuascut o la recurrente) mediante el recurso de revisión judicial de epígrafe y nos solicita que revoquemos la *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo) el 4 de febrero de 2025, notificada el 14 de febrero siguiente[1]. Mediante el referido dictamen, el DACo declaró *No Ha Lugar* a la impugnación de la cuota de mantenimiento instada por la recurrente; así como la solicitud para que se eliminara la deuda que mantenía por dicho concepto con el Consejo de Titulares y la Junta de Directores del Condominio Estancias de Aragón (en conjunto, la parte recurrida), sito en el municipio de Ponce. Adicionalmente, la agencia ordenó a la parte recurrida (1) a entregar

---

[1] Conforme surge del expediente administrativo, la determinación de la agencia fue notificada inicialmente el 6 de febrero de 2025. No obstante, el 14 de febrero de 2025, el DACo emitió una notificación enmendada a los fines de incluir al representante legal del Consejo de Titulares y la Junta de Directores.

una serie de documentos a la recurrente, y (2) a convocar una asamblea extraordinaria para la aprobación o el rechazo, mediante el voto, del ajuste a la cuota de mantenimiento. A su vez, ordenó a las partes de epígrafe a elaborar y establecer un plan de pago de la deuda por concepto de cuota de mantenimiento que mantiene la señora González Cuascut con la parte recurrida.

Por los fundamentos que expondremos a continuación, se revoca la *Resolución* impugnada y se desestima la querella instada por la recurrente.

**I.**

De entrada, señalamos que esta es la segunda ocasión dentro del mismo pleito en que las partes acuden a este foro apelativo. A los fines de una mejor comprensión, reseñamos a continuación el tracto pertinente al asunto que nos ocupa.

Conforme surge, la señora González Cuascut es la propietaria del apartamento B-114 ubicado en el Edificio B del Condominio Estancias de Aragón (en adelante, el Condominio). Como consecuencia de los terremotos ocurridos durante enero de 2020, el edificio B del Condominio fue declarado como inseguro. En atención a ello, la Junta de Directores del Condominio cursó una carta ordenando el desalojo de los inquilinos.[2] Así, la señora González Cuascut se vio obligada a desocupar su apartamento desde el 6 de marzo de 2020.

Así las cosas, **el 23 de agosto de 2022**, la señora González Cuascut presentó una querella ante el DACo impugnando la cuota de mantenimiento del Condominio.[3] A grandes rasgos arguyó que, a pesar de haber sido desalojada, la obligaban a continuar pagando la cuota de mantenimiento. Precisó que, la Junta de Directores, había

---

[2] Véase, el Apéndice del Recurso de revisión judicial, Exhibit #9.
[3] La querella no fue incluida en el Apéndice del Recurso de revisión judicial. No obstante, en cumplimiento con lo ordenado, el 27 de mayo de 2025, el DACo presentó el expediente original del caso ante la agencia.

ignorado sus peticiones para reevaluar el presupuesto del Condominio y a ajustar el pago de la cuota de mantenimiento a base al por ciento de ocupación; así como su solicitud de un plan de pago para la deuda que mantenía por dicho concepto.[4]

Al tenor de lo anterior, la recurrente solicitó, entre otros remedios, el ajuste de la cuota de mantenimiento y que se le concediera un plan de pago.

Tras varios trámites procesales, el 11 de enero de 2023, notificada el 13 de enero siguiente, el DACo desestimó la querella y decretó su cierre y archivo. Razonó que, de conformidad a la Ley núm. 129 de 16 de agosto de 2020, conocida como la *Ley de Condominios* de Puerto Rico, 31 LPRA sec. 1921 *et seq.* (Ley de Condominios), así como al Reglamento Núm. 9386 del 6 de junio de 2022, intitulado *Reglamento de Condominios*, la deuda que mantenía la recurrente impedía dilucidar la controversia.

Inconforme, la señora Hernández Cuascut presentó oportuna reconsideración. No obstante, esta no fue atendida por el DACo. Ante ello, esta acudió ante este foro apelativo mediante el recurso de revisión judicial (caso KLRA202400131). Allí, luego de evaluados los argumentos de las partes y acorde con el derecho aplicable, concluimos que el DACo había errado al desestimar la querella presentada por la señora González Cuascut. En detalle, razonamos que la agencia había ignorado la excepción dispuesta por la Ley de Condominios y el Reglamento Núm. 9386, la cual dispone que el requisito de no deuda no es necesario en casos en donde se impugne la misma. En consecuencia, revocamos el dictamen recurrido y devolvimos el caso al DACo para la continuación de los procesos.

Recibido el mandato, la agencia celebró una vista administrativa el 22 de octubre de 2024. Posteriormente, el 4 de

---

[4] En su querella, la señora González Cuascut reconoció que retuvo los pagos de la cuota de mantenimiento desde septiembre de 2021.

febrero de 2025, notificada el 14 siguiente, DACo emitió la *Resolución* impugnada.[5] En la misma, esbozó cuarenta y tres (43) determinaciones de hechos. A base de estas, y acorde al derecho vigente, razonó que la impugnación que pretendía la señora González Cuascut no había sido presentada dentro del término de treinta (30) días que dispone el ordenamiento jurídico. En detalle, explicó que la asamblea en la cual se había aprobado la continuación del pago de la cuota de mantenimiento fue celebrada el **3 de octubre de 2020**, y no había sido hasta el **23 de agosto de 2022**, que la señora González Cuascut había instado su reclamación.

De conformidad con lo anterior, la agencia declaró sin lugar tanto la impugnación de la cuota de mantenimiento, como la solicitud para la eliminación de la deuda por dicho concepto que mantenía la señora González Cuascut. Además de lo anterior, el DAco dispuso lo siguiente:

> [...]
>
> Se *Ordena* la parte querellada *Consejo de Titulares y Junta de Directores del Condominio Estancias de Aragón*, a que en el término improrrogable de 20 días, a partir de la notificación de esta Resolución, entregue a la parte querellante *Yvette González Cuascut*, los documentos solicitados, pero sin limitarse a, documentos relacionados a la actividad fiscal del condominio, las actas de las asambleas del Consejo de Titulares, las actas de las reuniones de la Junta de Directores, y los contratos adjudicados.
>
> Se *Ordena* a la parte querellante *Yvette González Cuascut*, y a la parte querellada *Consejo de Titulares y Junta de Directores del Condominio Estancias de Aragón*, a que en el término improrrogable de 20 días, a partir de la notificación de esta Resolución, elaboren, establezcan, y acuerden un plan de pago de la deuda que mantiene la parte querellante *Yvette González Cuascut*, con la parte querellada *Consejo de Titulares y Junta de Directores del Condominio Estancias de Aragón*.
>
> Se *Ordena* que dentro del plazo de *treinta (30) días* calendario, contados a partir de la fecha de notificación de la presente resolución, la parte querellada *Consejo de Titulares y Junta de Directores del Condominio Estancias de Aragón*, a través de su presidente en funciones y/o agente administrador convocará una

---

[5] Véase, el Apéndice del Recurso de revisión judicial, Exhibit #3.

*Asamblea Extraordinaria,* la cual se celebrará *en o antes de veinte (20) días* desde la convocatoria, en la cual el *Consejo de Titulares del Condominio Estancias de Aragón,* determine a través de voto, aprobar o rechazar ajustar el pago de la cuota de mantenimiento.

[...]

Inconforme, el 24 de febrero de 2025, la recurrente presentó una reconsideración.[6] Por medio de esta, solicitó que se tomaran medidas más rigurosas. Así, requirió que: (1) se declarase extinta la obligación del pago de la cuota de mantenimiento; (2) se citara a todos los titulares para que se expresaran en torno a la situación; (3) la asignación de un inspector para la supervisión de los procesos; (4) una orden de cese y desista contra la Junta de Directores del Condominio; y (5) la inhibición del representante legal del Consejo de Titulares por alegado conflicto de interés, entre otros.

Cabe señalar que, en su solicitud, la señora González Cuascut reconoció que la determinación impugnada –entiéndase, que no se alterara la cuota de mantenimiento–, había sido tomada en la asamblea celebrada el **3 de octubre de 2020**.

El 7 de marzo siguiente, el Consejo de Titulares y la Junta de Directores instaron una *Moción de Reconsideración.*[7] En síntesis, adujeron que, a tenor con el estado derecho, procedía que el DACo se declarase sin jurisdicción y desestimara la querella en cuestión.

El 10 de marzo de 2025, la recurrente replicó al referido pedido y reiteró sus súplicas.[8]

No surge del expediente administrativo que la agencia recurrida hubiese atendido los referidos petitorios.

Así las cosas, el 9 de abril de 2025, la señora González Cuascut acudió oportunamente ante este foro apelativo mediante el recurso de revisión judicial que nos ocupa. Aunque en su escrito no

---

[6] Véase, el Apéndice del Recurso de revisión judicial, Exhibit #4.
[7] La solicitud de reconsideración del Consejo de Titulares y la Junta de Directores tampoco fue incluida como parte de los anejos del recurso. Tomamos conocimiento judicial de la misma a través del expediente administrativo.
[8] Véase, el Apéndice del Recurso de revisión judicial, Exhibit #4.

realiza ningún señalamiento de error, esta arguye que se le ha violentado el debido proceso de ley. Precisa que, la Junta de Directores y el alegado representante legal del Consejo de Titulares continúan privándola de información, la obligan a continuar pagando la cuota de mantenimiento, y le impiden participar en la toma de decisiones sobre su propiedad. Adicionalmente, solicita una audiencia para expresarse.

El 18 de junio de 2025, el Consejo de Titulares y la Junta de Directores presentaron conjuntamente su alegato en oposición y solicitaron la desestimación del recurso. En esencia, adujeron que la causa de acción de la señora González Cuascut estaba prescrita desde el 2020, por lo que este foro carecía de jurisdicción para atender el recurso de revisión judicial. Adicionalmente, llaman a nuestra atención que las órdenes emitidas por el DACo resultan improcedentes, toda vez que dicho foro carece de jurisdicción, pues la querella fue presentada luego de transcurrido el plazo para ello.

Analizados los escritos de las partes y el expediente administrativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Revisión Judicial de las Decisiones Administrativas**

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Buxó Santiago v. ELA et. als.*, 2024 TSPR 130, 215 DPR ___ (2024); *Specialty et al. II.*, 179

DPR 923, 940 (2010).[9]

No obstante, esta deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder cuando: (1) la misma no esté basada en evidencia sustancial; (2) la agencia erró en la aplicación o interpretación de las leyes y el reglamento; (3) su actuación resulte ser una arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743 (2024). Por consiguiente, la revisión judicial de una decisión administrativa se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II, supra*, a la pág. 940.

En este ejercicio, nuestro más alto foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006). Quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Íd.*

Como corolario a lo anterior, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos realizadas, por una agencia

---

[9] Véanse, también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003); *Transp. Sonell v. Jta. Subastas ACT*, 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 2024 TSPR 70, 214 DPR ___ (2024).

administrativa, serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). De modo que, la parte afectada, deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota*, 163 DPR 716, 728 (2005). En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, Ley núm. 38-2017, *supra*. Sin embargo, ello "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota*, supra, a la pág. 729. Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.*

En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional para explicar la determinación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006), citando a *Otero v. Toyota*, supra.

**Ley de Condominios**

El 16 de agosto de 2020, la Asamblea Legislativa aprobó la Ley núm. 129 del 16 de agosto de 2020, denominada como la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1291 *et seq*, (Ley de

Condominios). La misma se aprobó con el fin de actualizar las normas que rigen la convivencia en los condominios y a atemperar la norma estatutaria a cambios sociológicos experimentados en el país. *Exposición de Motivos* de la Ley de Condominios.

En lo concerniente a la controversia que nos ocupa, el Artículo 65 de dicha ley, 31 LPRA sec. 1923j, intitulado *Impugnaciones de Acciones u Omisiones de la Junta de Directores, Administrador Interino y Acuerdos y Determinaciones del Consejo*, establece que el titular que ejerza dicha facultad tendrá un término de treinta (30) días para ello. Tal plazo comenzará a transcurrir a partir de la fecha en que se tomó el acuerdo o la determinación, si se hizo en presencia de quien impugna. Por el contrario, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación, el plazo de treinta (30) días comenzará a transcurrir desde que este recibió la notificación del acuerdo.

**Reglamento de Condominios**

El Reglamento de Condominios tiene como propósito proteger a los titulares de apartamentos sometidos al Régimen de Propiedad Horizontal, reconociendo su derecho al pleno disfrute de su apartamento y las áreas comunes. Ello, siempre y cuando no se menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades.

En cuanto a los términos para presentar una querella a los fines de impugnar cualquier determinación, acción u omisión por parte de la Junta de Directores o un acuerdo del Consejo de Titulares, la Regla 24 del Reglamento Núm. 9386, establece lo siguiente:

> [...]
>
> (1) Para todo tipo de impugnación, el titular tendrá **treinta (30) días** a partir de la fecha que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los **treinta (30) días** siguientes a la fecha en que recibe la notificación del acuerdo, si el titular

afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.

[...]

**III.**

Según adelantáramos, esta es la segunda ocasión dentro del mismo pleito en que la señora González Cuascut acude ante este foro revisor.

En aquel momento, el único asunto ante nuestra atención se circunscribió a si el DACo contaba con jurisdicción para atender la querella presentada, aun cuando la señora González Cuascut mantenía una deuda con el Consejo de Titulares del Condominio, por concepto de cuota de mantenimiento. En ese contexto, resolvimos que el DACo había errado al desestimar la demanda por razón de la deuda, en tanto la Ley de Condominios y el Reglamento contemplan una excepción a dicho requisito en casos donde se impugne la referida cuota, como ocurría en ese caso. En consecuencia, revocamos la determinación de la agencia y devolvimos el caso para la continuación de los procedimientos.

No obstante, una vez revisado nuevamente el asunto, el DACo emitió la determinación recurrida, en la que, en primer orden, concluye que la querella no fue presentada dentro del término de treinta (30) días dispuesto tanto la Ley de Condominios como por el Reglamento, por lo que carece de jurisdicción para atenderla.

Analizado este fundamento, que se presenta por primera vez ante nuestra consideración, coincidimos con el razonamiento de la agencia.

Según reseñado, la determinación impugnada por la señora González Cuascut fue alcanzada en asamblea el **3 de octubre de 2020, a la cual esta asistió**. Conforme al ordenamiento jurídico vigente, la recurrente contaba con un término de treinta (30) días para presentar su reclamación. Esto es, hasta el 2 de noviembre

próximo. No obstante, la querella se presentó el **23 de agosto de 2022, casi tres (3) años luego de vencido el plazo para ello**. De la lectura minuciosa de la normativa regente, notamos que dicho término no admite extensión alguna para la presentación de la querella, aún en los casos en los que aplique la excepción al requisito de no deuda. De modo que, la señora González Cuascut presentó su reclamación de manera tardía. Recordemos que la recurrente, en su solicitud de reconsideración, admitió que la determinación objetada había sido tomada en la asamblea celebrada el **3 de octubre de 2020**.

Consecuentemente, el DACo carecía de jurisdicción para revisar la misma, como bien razonó.

Ahora bien, adviértase que aun cuando el DACo se declaró sin jurisdicción, este emitió dos determinaciones –al declarar *No Ha Lugar* a las solicitudes de la señora González Cuascut– y dictó tres (3) órdenes.

Como es sabido, al igual que ocurre en el foro judicial, una agencia administrativa no tiene discreción para asumir jurisdicción donde no la hay. *Muñoz Barrientos v. ELA et al.*, 212 DPR 714, 726 (2023) citando a *Raimundi v. Productora*, 162 DPR 215, 224 (2004). En tales circunstancias, únicamente procede la desestimación de la acción ante su consideración.[10]

Así pues, en el presente caso, el DACo estaba impedido de emitir una determinación sobre las reclamaciones de la señora González Cuascut. Más aún, el DACo carecía de autoridad para dictar orden alguna a las partes. Por tanto, esta actuación resulta *ultra vires*.

---

[10] *Véase, González v. Mayagüez Resort & Casino*, 176 DPR 848 (2009); *García v. Hormigonera Mayagüezana*, 172 DPR 1 (2007).

En su consecuencia, no tenemos otra alternativa que dejar sin efecto la *Resolución* recurrida y desestimar la querella presentada por la señora González Cuascut.

**IV.**

Por los fundamentos antes expuestos, se revoca la *Resolución* impugnada y se desestima la querella instada por la recurrente. El juez Sánchez Ramos disiente con opinión escrita.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

| YVETTE GONZÁLEZ CUASCUT<br><br>Querellante-Recurrente<br><br>v.<br><br>CONSEJO DE TITULARES Y JUNTA DE DIRECTORES DEL CONDOMINIO ESTANCIAS DE ARAGÓN, LUIS R. SÁNCHEZ PERAZA-PRESIDENTE<br><br>Querellados-Recurridos | KLRA202500259 | Revisión procedente del Departamento de Asuntos del Consumidor, Oficina Regional de Ponce<br><br>Querella núm.: C-PON-2022-0003373<br><br>Sobre: Ley de Condominios (Ley núm. 129 del 16 de agosto de 2020) |

Panel integrado por su presidente el juez Sánchez Ramos, el juez Salgado Schwarz y el juez Rivera Torres



## VOTO DISIDENTE DEL JUEZ SÁNCHEZ RAMOS

Aunque estoy de acuerdo en que el error señalado por la Sa. Yvette González Cuascut (la "Querellante" o la "Recurrente") no se cometió, disiento de la determinación de adjudicar los errores independientes que la parte **recurrida** (el "Condominio") señala en su **oposición** al recurso de revisión judicial presentado por la Querellante. Si el Condominio consideraba que la agencia recurrida ("DACo") erró de una forma adversa a sus intereses, y si el Condominio interesaba que este Tribunal adjudicara al respecto, dicha parte estaba obligada a presentar su propio recurso de revisión judicial. No podía, a través de una oposición al recurso presentado por la otra parte, solicitar la revisión de asuntos que de forma alguna formaron parte de los errores señalados por la Recurrente.

Adviértase que, en este caso, la Recurrente impugna la determinación del DACo a los efectos de que no procedía su querella, relacionada con el cobro de la cuota de mantenimiento. Ese era el único asunto propiamente ante la consideración de este Tribunal.

No tenemos jurisdicción para considerar los errores traídos por el Condominio en su oposición al recurso de la Querellante, mediante los cuales se impugnan las siguientes determinaciones del DACo: (i) orden de entregar a la Querellante cierta información; (ii) orden de negociar un plan de pago en cuanto a la deuda de la Querellante; y (iii) orden de celebrar una asamblea extraordinaria para que el Consejo de Titulares del Condominio determine si aprueba, rechaza o ajusta la cuota de mantenimiento vigente.

Para obtener una adjudicación de este Tribunal en torno a estos asuntos, era necesario que el Condominio presentara, oportunamente, su propio recurso de revisión judicial. De ninguna forma podía el Condominio "coger pon" con el recurso de la Querellante, y a través de su oposición, lograr que este Tribunal adjudicara asuntos no relacionados con los errores planteados por la Recurrente en su recurso.

Así pues, como carecemos de jurisdicción para revocar las determinaciones del DACo que no fueron cuestionadas por la Recurrente (ni por el Condominio a través de un oportuno recurso de revisión judicial), respetuosamente disiento.

En San Juan, Puerto Rico, a 5 de agosto de 2025.

Roberto Sánchez Ramos
Juez de Apelaciones