ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JUAN M. ROIG RODRÍGUEZ RECURRENTE V. DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN RECURRIDOS | TA2025RA00126 | *REVISIÓN JUDICIAL* procedente del Departamento de Corrección y Rehabilitación Querella Núm.: 316-25-018 |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de octubre de 2025.

Comparece ante nos, por derecho propio, Juan M. Roig Rodríguez (en adelante, "el recurrente"). A los fines de solicitar nuestra intervención para que dejemos sin efecto la *"Resolución"* emitida el 2 de abril de 2025 y notificada el 11 de abril de 2025, por el Departamento de Corrección y Rehabilitación (en lo sucesivo, por sus siglas, "DCR"). Mediante la referida determinación, un Oficial Examinador declaró que el recurrente infringió los códigos 109 ("Posesión, Distribución, Uso, Venta o Introducción de Accesorios de Teléfonos Celulares o Equipo de Telecomunicaciones") y 200 (Contrabando) del Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional, Reglamento Núm. 9221 del 8 de octubre de 2020.

A su vez, concluyó que el recurrente no infringió los códigos 106 y 222 del precitado Reglamento. En consecuencia, el DCR privó al recurrente de los siguientes privilegios: el recibo de visitas; comisaría; recreación activa; correspondencia (excepto legal); actividades

especiales; y cualquier otro privilegio que le pudiera conceder la institución correccional, por el término de sesenta (60) días.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación objeto de revisión.

**I.**

El recurrente se encuentra en la institución correccional Guerrero 304 de Aguadilla, en cumplimiento de una pena de reclusión. Mediante el presente recurso de revisión judicial, cuestiona las sanciones que le fueron impuestas por infringir los aludidos códigos 109 y 200, según establecidos en las Reglas 15 y 16 del del Reglamento Núm. 9221, *supra.*

Surge del expediente ante nuestra consideración, que el 3 de febrero de 2025, un Oficial Correccional presentó en contra del recurrente un *"Informe Disciplinario (Querella)."* Sostuvo, que éste infringió los códigos 106; 109; 200; y 222 del Reglamento Núm. 9221, *supra.* Los hechos constitutivos de las referidas infracciones se sintetizan a continuación, según los dichos del Oficial Correccional querellante:

> Hoy 3 de febrero de 2025 a eso de las 2:25p.m. mientras me encontraba asignado al área del Laundry me disponía a subir la ropa limpia del edificio 7 junto a los confinados que laboran en el área y es cuando me percato que el confinado Juan Roig Rodríguez estaba acomodando algo en el bolsillo del carro azul de transportar la ropa limpia que se lav[ó] hoy del edificio 7, acto seguido procedí a verificar el bolsillo y encuentro un cable pequeño de cargado[r] de teléfono celular de color blanco, le pregunt[é] al confinado Juan Roig Rodríguez y [é]ste me contest[ó] que lo había encontrado en una de las ropa sucia del edificio 7 y [é]ste me aleg[ó] de que era para botarlo, a lo que le indiqu[é] al confinado de que [é]l est[á] debidamente orientado de las normas del área de lavandería. Luego el confinado me indica que él quería el cable para venderlo.

Posteriormente, el 5 de febrero de 2025, el DCR le notificó al recurrente un documento intitulado *"Reporte de Cargos."* En este se establece el número de la *"Querella;"* la fecha de los hechos; un resumen de estos; y las infracciones imputadas.

Así las cosas, el 24 de febrero de 2025, el recurrente fue citado a una *"Vista Administrativa Disciplinaria"* a celebrarse el 2 de abril de 2025.

El día de la referida vista, el recurrente presentó *"Moción en Solicitud de Desestimación."* Adujo, que la *"Querella"* adolece de varios

defectos. Al respecto, especificó, que en ella erróneamente se indica que él había sido asignado al área de "laundry." Añadió, que el número de *"Querella"* no se puede leer con claridad; que los aducidos actos prohibidos no están escritos en letra legible; y esgrimió que la referida *"Querella"* carece de la firma del Oficial Correccional querellante. En cuanto a los méritos de los actos prohibidos, arguyó que el Oficial Correccional no puede concluir que el cargador hallado le pertenezca ni que el mismo fue encontrado en posesión de su persona. Asimismo, aseveró que son falsas las alegaciones del Oficial Correccional respecto a que él pretendía botar o vender el cargador.

Celebrada la *"Vista Administrativa Disciplinaria,"* el 11 de abril de 2025, el DCR notificó la *"Resolución"* que hoy nos ocupa. Mediante esta, un Oficial Examinador, determinó que el recurrente infringió los códigos 109 ("Posesión, Distribución, Uso, Venta o Introducción de Accesorios de Teléfonos Celulares o Equipo de Telecomunicaciones") y 200 (Contrabando) del Reglamento Núm. 9221, *supra.* A su vez, concluyó que el recurrente no infringió los códigos 106 y 222 del precitado Reglamento. En consecuencia, el DCR privó al recurrente de los privilegios de visita; comisaría; recreación activa; correspondencia (excepto legal); actividades especiales; y cualquier otro privilegio que le pudiera conceder la institución correccional, por el término de sesenta (60) días.

En desacuerdo, oportunamente, el 15 de abril de 2025, el recurrente presentó *"Reconsideración de la Resolución."* En atención de ello, el 1 de julio de 2025, el DCR adjudicó la reconsideración presentada y la declaró *No Ha lugar.*

Aun en desacuerdo, el 22 de julio de 2025, el recurrente presentó ante este Tribunal un recurso de revisión judicial. Mediante este, esbozó los siguientes señalamientos de error:

> **Primer Error**: En la copia que se le entrega al sr. Roig en el rengl[ón] #2 de dicha querella no se puede leer el número de querella, por lo que es una violación al Reglamento para establecer el procedimiento disciplinario de la población correccional Núm. 9221 del 8 de octubre de 2020.

Regla 6: Querella Disciplinaria letra A: Contenido de la querella disciplinaria. [L]a querella disciplinaria se redactará en letra legible y contendrá la siguiente información:

1.> una descripción clara y detallada del incidente que, de lugar a la misma, incluyendo la fecha (día/mes/año) hora y lugar del incidente.

Regla 7: Querella Defectuosa:

El oficial de querella inmediatamente revisar[á] la querella para determinar si estar[á] redactad[a] adecuadamente, asegurándose que contenga una narración clara y detallada de los hechos del caso y que de la misma surjan los elementos de la comisión de un acto prohibido.
1.> Si hay diferencias en la querella, el oficial de querellas devolverá la misma al querellante para que [é]ste haga las correc[c]iones de rigor, según le sean señaladas, dentro del [t]érmino de dos (2) días laborables.
Cabe señalar que Judicial y/o cualquier otro departamento gu[b]ernamental [sic] [.] Toda copia de documentos legales, son [t]an importante[s] como el original, por lo que deben ser claros y legible[s] para que as[í] se pueda [t]ener la oportunidad de una defensa apropiada y [j]usta.

**Segundo Error**: En el rengl[ó]n #5 el O.C. Álvarez indica que el sr. Roig está asignado al área de laundry, lo que no es verdad ya que el sr. Roig nunca fue asignado a dicha área de trabajo por el comit[é] de clasificación y tratamiento, lo dicta el Manual para establecer normas y procedimientos para las lavanderías institucionales, centros de tratamiento residenciales y hogares de adaptación social:

Art. V: Normas Generales

Núm. 7: Todo miembro de la población correccional que rinda labores en las lavanderías deberá:
Inciso (b); ser asignado por el comité de clasificación y Tratamiento. Que el hecho de [t]ener una solicitud de [t]rabajo en el área de sociales no es [t]ener [t]abajo. [E]l confinado debe pa[s]ar primero por una evaluación m[é]dica si esta apto para rendir labores físicas, de ser aprobado por el doctor de la institución, el socio penal del confinado procede a asignarle el [t]rabajo solicitado.
Adicional el rengl[ó]n #5 est[á] intitulado (Trabajo asignado) no est[á] intitulado Trabajo solicitado por lo que, el o.c. erra al informar que el sr. Roig est[á] asignado al área de laundry por lo que es incurrir en un delito seg[ú]n la ley de perjurio [t]ipicado en el art. 269 del Código Penal de P.R., art. 206 (falso testimonio) y art. 210 (figura hibrida de perjurio).

**Tercer Error**: En el rengl[ó]n #7 donde se debe describir los actos prohibidos, no se puede leer con claridad por lo que falla al Reglamento para establecer el procedimiento disciplinario de la población correccional Núm. 9221 del 8 de octubre de 2020, Regla 6, letra A, Núm. 1 y la Regla 7. Al igual que antes mencionado (Rengl[ó]n #2), el no poder describir con claridad de que se le acusa a una persona es negarle el derecho de poder defenderse correctamente.

**Cuarto Error**: En el rengl[ó]n #17 no ve la firma del querellante, por lo que constituye que el documento que se le entreg[ó] al sr. Roig es totalmente ileg[í]timo y falla en cumplir con la ley y el Reglamento institucional establecido, por lo que es invalido.

**Quinto Error**: Que la Vista Administrativa Disciplinaria y la Resolución de dicha querella fueron manejadas por el Oficial Examinador Javier D. Núñez Otero, que es la misma persona que

recibe la Reconsideración de la Resolución que Rechaza de Plano. [S]e entiende que al ser la misma persona quien emite una Resolución y luego Rechaza de Plano la Reconsideración de la Resolución es un acto injusto, malicioso y que no muestra imparcialidad alguna. Cabe mencionar que para evitar injusticia como esta es que existe el Tribunal de Primera Instancia separado del Tribunal de Apelaciones. Es incomprensible que el mismo oficial examinador atienda la Reconsideración que apela su Resolución.

**Sexto Error**: El oficial examinador encuentra incurso al sr. Roig por violación a los c[ó]digos 109 y 200 cuando el mismo o.c Álvarez admite en su declaración de hechos que el cable blanco fue [h]a[ll]ado en el bolsillo del carro azul de la lavander[í]a, por lo cual es una declaración directa que el sr. Roig no estaba en posesión de dicho cable blanco, por lo que constituir[í] un [h]a[ll]azgo. Adicional que el sr. Roig nunca y en ning[ú]n momento le expresa al o.c Álvarez que encontr[ó] el cable blanco en la ropa del edificio 7. Por lo que encontrar incurso al sr. Roig por violación al c[ó]digo 109 (Posesión) y 200 (contrabando) es errar en el debido proceso ya que el cable fue [h]a[ll]ado y no ocupado en el confinado.

En la misma fecha, el recurrente presentó *"Declaración en Apoyo de Solicitud para Litigar como Indigente (In Forma Pauperis)."*

Así las cosas, el 15 de agosto de 2025, notificamos una *"Resolución,"* a través de la cual declaramos *Ha Lugar* la declaración presentada por el recurrente y le concedimos un término de treinta (30) días al DCR para que presentara su posición con relación al recurso de revisión judicial. Además, le ordenamos al referido Departamento que presentara una copia certificada del expediente administrativo del caso ante nuestra consideración.

En cumplimiento de lo ordenado, el 12 de septiembre de 2025, el DCR presentó copia certificada del expediente administrativo. Asimismo, el 22 de septiembre de 2025, presentó su alegato en oposición al recurso presentado por el recurrente.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco jurídico atinente a la controversia que hoy nos ocupa.

**II.**

**A.    Revisión Judicial y la deferencia a las decisiones administrativas:**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de las facultades delegadas por

ley, cumplan con los mandatos constitucionales aplicables y asegura que los ciudadanos tengan un foro al cual recurrir para vindicar sus derechos. *Voilí Voilá Corp. et al v. Mun. Guaynabo,* 213 DPR 743, 753 (2024). En lo atinente, en el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias administrativas debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70; *Asoc. Fcias. v. Caribe Specialty et al. II.,* 179 DPR 923, 940 (2010); véanse también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003).

Ahora bien, nuestro Tribunal Supremo ha reiterado que la deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder, solamente, cuando la misma no esté basada en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *Pérez López v. Depto. Corrección*, 208 DPR 656, 673 (2022); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012). En el escenario particular de las cuestiones de derecho, el Tribunal Supremo ha proferido las siguientes expresiones:

> Hoy hacemos eco a las palabras del foro federal y concluimos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56.

Por otra parte, nuestro Más Alto Foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *OEG v. Martínez Giraud,* 210 DPR 79, 89

(2022); *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006); *véanse también*, *Otero v. Toyota*, supra; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 DPR 521, 532 (1993).

**B.      Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional (Reglamento 9221):**

El Reglamento 9221 constituye una estructura disciplinaria dirigida a la modificación de conducta de los confinados desde la perspectiva de la rehabilitación. Véase, la Introducción del Reglamento 9221, *supra*. El presente Reglamento se adoptó a tenor de la política pública que establece la creación de un sistema correccional mediante el cual se facilite la imposición de penas, medidas de seguridad y custodia de los que incurren en conducta delictiva, así como un sistema correccional que promueva la reinserción social. *Id*. En términos de contenido, este Reglamento regula el procedimiento disciplinario para la población correccional bajo el fin de mantener el orden, la tranquilidad y el funcionamiento adecuado de las instituciones correccionales. *Id*.

La Regla 3 del Reglamento 9221, *supra* provee una serie de principios. Entre estos, se destaca que como regla general el ejercicio de imposición de medidas disciplinarias a la población correccional se llevará a cabo únicamente mediante resolución de un Oficial Examinador. Para que sea legítima la medida disciplinaria el confinado debe concretar un acto prohibido por acción u omisión. *Id*. La sanción por imponer solo procederá si el acto prohibido que se realiza es intencional o negligente. *Id*. La Regla 14 del Reglamento 9221, *supra* divide los actos prohibidos en dos (2) niveles de escalas disciplinarias: Nivel I y Nivel II (menos graves). Estos niveles se describen a continuación:

> 1. Nivel I - Actos prohibidos, tentativa de actos prohibidos, como los tipificados en el Código Penal de Puerto Rico como delito grave y en las leyes especiales. Violaciones administrativas que por su propia naturaleza y magnitud constituyen riesgo o amenaza a la tranquilidad, la seguridad y el funcionamiento institucional; o a cualquier persona.

> 2. Nivel II (menos graves) - Actos prohibidos, tentativa de actos prohibidos, como los tipificados en el Código Penal de Puerto Rico como delito menos grave y en las leyes especiales. Violaciones administrativas que por su naturaleza o magnitud

perturban la paz institucional y no necesariamente constituyen una amenaza a la seguridad institucional.

Cónsono con lo anterior, la Regla 15 del Reglamento 9221, *supra* contempla los actos prohibidos Nivel I. En lo atinente, entre estos, se encuentra el acto prohibido (109) a través del cual se sanciona la siguiente conducta:

> Posesión, Distribución, Uso, Venta o Introducción de Accesorios de Teléfonos Celulares o Equipo de Telecomunicaciones – Se prohíbe la posesión, distribución, uso, venta, introducción de material asociado al uso de teléfonos celulares o equipos de telecomunicaciones; incluyendo sin limitarse, a cargadores, audífonos, fusibles, bujías, cables, baterías, tarjetas de memoria, entre otros.

Por su parte, la Regla 16 del Reglamento 9221, *supra* establece los actos prohibidos Nivel II (menos graves). Entre estos se encuentra el contrabando como acto prohibido número (200). La referida Regla define dicho acto de la siguiente manera:

> Consiste en la posesión de artículos o materiales considerados no peligrosos, que no sean suministrados o autorizados por el Departamento de Corrección y Rehabilitación. También se considerará contrabando aquellos artículos en exceso de los permitidos en el área de vivienda, tales como los artículos de consumo, o cualquier otro establecido por el Departamento de Corrección y Rehabilitación, excluyendo aquellos tipificados como contrabando peligroso.

En términos procedimentales, los procesos disciplinarios de los miembros de la población correccional iniciaran con la presentación de una querella. La referida querella puede ser instada por cualquier persona, ya sea un visitante; confinado; empleado civil de la institución; un oficial correccional; un funcionario del DCR; o un empleado de otra agencia que trabaje en la institución. Véase, Regla 6 del Reglamento 9221, *supra.* La querella disciplinaria se debe redactar en letra legible y contener la siguiente información: 1. Una descripción clara y detallada del incidente que dé lugar a la misma, incluyendo la fecha (día/mes/año), hora y lugar del incidente; 2. Nombre del miembro de la población correccional querellado; 3. Nombre de los testigos, si alguno; 4. La prueba obtenida; 5. Manejo de la prueba; 6. Nivel y código correspondiente al acto prohibido imputado; 7. Nombre del querellante; 8. Identificación precisa del querellante (puesto, número de placa, posición, lugar de

trabajo); 9. Fecha de radicación de querella disciplinaria; y 10. Si se obtuvo algún tipo de información confidencial, proceder de acuerdo con lo dispuesto en la Regla 31 y la Regla 32 de este Reglamento. *Id.*

Una vez instada la querella, se le notificará al miembro de la población correccional un *"Reporte de Cargos,"* mediante el cual de manera clara y específica se le informará al confinado los hechos y acciones que constituyen violación a las reglas y normas de conducta reglamentarias. Regla 6 del Reglamente 9221, *supra.* Además, se le comunicará las disposiciones que ha infringido y se le advertirá que su caso será referido para la celebración de una vista administrativa. *Id.* La regla 7 del Reglamento 9221, *supra* establece que el Oficial de Querellas revisará que toda querella presentada esté redactada de forma adecuada. Entiéndase, se asegurará que ésta contenga una narración clara y detallada de los hechos imputados y que de la misma surjan los elementos de la comisión de un acto prohibido. *Id.* De existir alguna deficiencia en la querella, el Oficial de Querellas devolverá la misma al querellante para su correspondiente corrección. *Id.*

Una vez presentada la querella disciplinaria, el caso quedará sujeto a la investigación del Oficial de Querellas. A esos fines, la Regla 12 del Reglamento 9221, *supra* regula el procedimiento investigativo de medidas disciplinarias. Durante dicho proceso, el Oficial de Querellas deberá, entre otras cosas, entrevistar a toda persona relacionada con los hechos imputados; investigar en detalle la versión de los hechos del querellado; orientar al aludido querellado sobre su derecho a guardar silencio; obtener declaraciones de testigos y respuestas a las preguntas formuladas por el querellado; y preparar un informe completo y detallado que contenga la prueba recopilada.

Concluida la investigación correspondiente y celebrada la vista administrativa, un Oficial Examinador considerará toda la prueba presentada en la vista, tomará una decisión en sus méritos a tenor del estándar probatorio de preponderancia de la prueba y emitirá una

resolución que contendrá una o más de las siguientes determinaciones: a. Declarar al miembro de la población correccional incurso en la comisión del acto prohibido imputado; b. Imponer las sanciones correspondientes al nivel de severidad del acto prohibido imputado; c. Declarar al miembro de la población correccional No Incurso; d. Desestimar la querella, cuando no haya prueba suficiente para sostener la imputación contra el miembro de la población correccional querellado, o si no habiendo controversia real en los hechos, como cuestión de derecho procede se dicte resolución a favor de éste. Véase, la Regla 28 del Reglamento 9221, *supra*.

En la resolución que ha de emitir el Oficial Examinador, éste tendrá la facultad de incluir, a su discreción, la medida disciplinaria de pérdida de mas de un privilegio, de conformidad al nivel de severidad del acto prohibido imputado. Véase, la Regal 17 del Reglamento 9221, *supra*. En cuanto a la autoridad del Oficial examinador en la toma de decisiones, es meritorio señalar lo siguiente:

> Las determinaciones así tomadas por el Oficial Examinador serán consideradas como del Departamento y están sujetas a solicitud de reconsideración, presentada por el miembro de la población correccional como parte afectada, con respecto a su determinación final del caso ante su consideración. También, tendrá jurisdicción inherente para la consideración y disposición de solicitudes de reconsideraciones de sus propias decisiones. Regla 30, del Reglamento 9221, *supra.*

**III.**

En su recurso de revisión judicial, el recurrente alega que la *"Querella"* es frívola, defectuosa y contraviene el Reglamento Núm. 9221, *supra.* Particulariza, que la copia de *"Querella"* que le fue entregada carece de legibilidad y claridad. Añade, que él no estaba asignado oficialmente al área de lavandería y que el cable de teléfono en virtud del cual fue sancionado, no se encontró en su posesión, sino que fue hallado por el Oficial Correccional querellante en el bolsillo del carro de lavandería. Cónsono con lo anterior, sostiene que no le indicó al referido Oficial que pretendía botar o vender el cable de teléfono. De otra parte, arguye que el Oficial Examinador que emitió la determinación recurrida debía estar impedido de adjudicar también la reconsideración que él

presentó, puesto que dicho accionar lacera la imparcialidad de los procesos.

Por su parte, el DCR argumenta que a las agencias administrativas les asiste una presunción de legalidad y corrección de conformidad a nuestro ordenamiento de derecho administrativo. De igual modo, aduce que el recurrente no logró demostrar que la interpretación jurídica del Reglamento 9221, *supra*, ejercida por el Oficial Examinador, sea errónea. Asimismo, arguye que la *"Resolución"* objeto de revisión está basada en la prueba que obra en el expediente administrativo. Por otro lado, alega que los documentos facilitados al recurrente contienen claramente el acto prohibido imputado y que el referido recurrente tuvo la oportunidad de defenderse. Además, esgrime que a pesar de que el recurrente no estaba asignado oficialmente al área de lavandería, éste fue informado de la normativa aplicable al lugar e inició voluntariamente labores en dicha área sin contar con la autorización final para ello.

Tras un examen detenido y ponderado de la documentación presentada por las partes y de la copia certificada del expediente administrativo, concluimos *confirmar* la determinación recurrida. Los fundamentos que inclinan nuestra decisión confirmatoria se detallan a continuación.

Surge del precitado marco doctrinal, que los foros judiciales debemos conceder gran deferencia a las determinaciones administrativas debido al conocimiento especializado que éstas ostentan sobre los asuntos que legislativamente le han sido encomendados. Cónsono con lo anterior, las determinaciones de hechos de las agencias administrativas tienen a su favor una presunción de legalidad y corrección. La deferencia a las agencias administrativa solo habrá de ceder cuando éstas hayan actuado arbitraria, ilegal o irrazonablemente y cuando la decisión que emitan no esté basada en evidencia sustancial que obre en el expediente administrativo.

Del examen del expediente administrativo, surge que el DCR cumplió cabalmente con el proceso disciplinario establecido en el Reglamento 9221, *supra* para lograr que la sanción impuesta al recurrente sea legítima. La *"Querella"* instada por el Oficial Correccional contiene una versión clara y detallada, con fecha y hora de los actos prohibidos imputados al recurrente. Asimismo, de ésta se desprende la firma del querellante y del confinado recurrente. De igual modo, contiene la numeración de los actos prohibidos imputados. Cabe señalar que, de la documentación anejada por el recurrente en el recurso de revisión judicial, surge un documento intitulado *"Reporte de Cargos."* Éste refleja que el recurrente fue notificado con claridad y precisión de los hechos alegados y de los actos prohibidos imputados. De igual modo, a través de dicho reporte se le indicó al recurrente que próximamente se celebraría una vista administrativa para su caso y que tenía derecho a obtener copia de todo documento que sea parte del reporte de cargo. Todo ello, se realizó de conformidad a la Regla 6 del Reglamento 9221, *supra*.

Además, el caso del recurrente pasó por un procedimiento de investigación dirigido por una Oficial de Querellas. La referida Oficial rindió un *"Informe Disciplinario"* que contiene, entre otras cosas, la declaración del confinado; la declaración del Oficial Correccional querellante; y los derechos que le fueron advertidos al recurrente, incluyendo el derecho que le asistía a guardar silencio, a que se entrevistaran testigos específicos; a proponer preguntas concretas para los testigos a entrevistar; y el derecho a asistir a la vista en compañía de un abogado. En el ejercicio de sus derechos, el recurrente solicitó que se entrevistara a su Técnica Socio Penal y al Oficial Correccional querellante. Surge de la copia certificada del expediente administrativo, que éstos fueron entrevistados y que les fueron realizadas las preguntas específicas peticionadas por el recurrente. En vista de lo anterior, el proceso investigativo que se llevó a cabo en este caso cumplió con la Regla 12 del Reglamento 9221, *supra*.

Asimismo, se desprende de la copia certificada del expediente administrativo, que en el caso del recurrente se celebró una *"Vista Administrativa Disciplinaria."* De igual manera, surge de dicho expediente que, durante la vista, el recurrente pudo prestar declaración y escuchar la lectura y discusión de la *"Querella"* y el *"Informe Disciplinario."* Finalmente, un Oficial Examinador adjudicó su caso y emitió la correspondiente resolución final con determinaciones de hechos, conclusiones de derecho y las necesarias advertencias de reconsideración y revisión judicial.

En el ejercicio adjudicativo, el Oficial Examinador tomó en consideración la siguiente prueba: *Declaración del Querellante Raúl Álvarez, Oficial de Custodia; Declaración del Confinado Querellado en la audiencia; Ampliación de investigación a solicitud del Confinado Querellado; Declaración de Wilmarie Caro Vendrell, Técnico de Servicios Sociopenales; Evaluación para Confinado(s) Candidato(s) a Trabajo; Petición de Trabajo; Acuse de Recibo, Evaluación para Confinados Candidatos a Trabajo; Orientación a Miembros de la Población Correccional Asignados al Área de Lavandería; Evidencia mediante foto; e Informe de Investigación.* De ello resulta, que la *"Resolución"* emitida se realizó de conformidad a la evidencia existente en el expediente administrativo.

De otra parte, no existe controversia sobre el hecho de que el recurrente no estaba oficialmente asignado al área de lavandería. Sin embargo, ese hecho no es pertinente ni un eximente de responsabilidad al monte de evaluar la conducta prohibida imputada. A su vez, el recurrente no cuestiona la existencia de su presencia en el área de lavandería al momento de los hechos y tampoco alega que el trabajo que realizó en dicho día y lugar fuera contrario a su voluntad. En cuanto a las alegaciones atinentes a la imparcialidad del Oficial Examinador, no existe impedimento jurídico en que la persona que emite un dictamen final sea la misma que evalúe la procedencia de una moción de reconsideración. De

hecho, el Oficial Examinador tiene autoridad reglamentaria para la adjudicación impugnada, puesto que la Regla 30 del Reglamento 9221, *supra* le permite considerar y disponer de las solicitudes de reconsideración de sus propias decisiones.

Así pues, en vista de que el DCR completó debidamente el proceso reglamentario aplicable y a la luz de que la decisión recurrida se sostiene de la prueba sustancial que obra en el expediente administrativo, no existen razones de peso para resolver en contra de la gran deferencia que los foros judiciales debemos prestarle a las determinaciones fácticas de las agencias administrativas, las cuales, reiteramos, están revestidas de una presunción de legalidad y corrección.

**IV.**

Por los fundamentos expuestos, *confirmamos* la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones