Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| HÉCTOR MERCADO CUEVAS<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | TA2026RA00107 | REVISIÓN JUDICIAL procedente del Departamento de Corrección y Rehabilitación<br><br>Caso núm.: 212-25-070 |
|---|---|---|

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 16 de abril de 2026.

Comparece ante este tribunal apelativo, el Sr. Héctor Mercado Cuevas (señor Mercado Cuevas o recurrente), mediante el recurso de *revisión judicial* de epígrafe solicitándonos que revisemos la *Resolución* emitida por el Departamento de Corrección y Rehabilitación (DCR o parte recurrida) el 14 de enero de 2026, notificada el 23 de enero siguiente. En este dictamen, el DCR determinó que el recurrente incurrió en violación a los Códigos 108 y 110 del Reglamento Núm. 9221 intitulado *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional,* infra*, por habérsele ocupado un* celular con imágenes, audio, grabaciones y cuentas activas en redes sociales mediante un registro a su celda.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

### I.

Surge de la *Resolución* impugnada que el recurrente se encuentra recluido en la Institución Correccional Bayamón 1072.[1]

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del TA (SUMAC), SUMAC TA, Entrada núm. 4, Anejo, a la pág. 1.

El 4 de noviembre de 2025 se realizó un registro en el Edificio 4, Sección B, Celda 104, que corresponde al señor Mercado Cuevas. Mediante el mismo, se le ocupó un celular marca IPhone 13, modelo Pro-Max, en cuyo interior guardaba fotos, audios y videos del recurrente; así como cuentas activas en redes sociales como Facebook, Instagram, WhatsApp y Threads.

Ese mismo día, se preparó el *Informe de Querella de Incidente Disciplinario* (Querella Núm. 212-25-070) en contra del recurrente en el que se especificó lo antes detallado.[2] A base de ello, se le imputó como acto prohibido haber incurrido en los Códigos 108, 110 y 232 del Reglamento Núm. 9221 intitulado *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional* promulgado por el DCR el 8 de octubre de 2020 (Reglamento Núm. 9221). Este informe le fue entregado al recurrente el 10 de noviembre siguiente, quien se negó a firmar como recibido. Como parte del mismo se le anejó el documento intitulado *Derechos que le Asisten al Confinado cuando se le Radica un Informe Disciplinario,* el cual fue recibido por el recurrente.

Asimismo, el 13 de enero de 2026, se le notificó la *Citación para Vista Administrativa Disciplinaria* en la que se especifica que la vista se celebraría el próximo día, 14 de enero de 2026.[3] Se le entregó, además, el *Reporte de Cargos* en el que se indicó que se le imputaba violación por los cargos o actos prohibidos prescritos en los Códigos 108 (Posesión, distribución, uso, venta o introducción de teléfonos celulares o equipos de telecomunicaciones); 110 (Uso de tecnologías de información), y 232 (Violar cualquiera de las reglas internas de convivencias y funcionamiento institucional establecidas en el Departamento de Corrección y Rehabilitación que no estén específicamente tipificadas en cualquier nivel de severidad

---

[2] *Íd.*
[3] SUMAC TA, Entrada núm. 4, Anejo, a la pág. 3.

del Reglamento) del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional, supra.*

El 14 de enero de 2026, se celebró la vista disciplinaria mediante videoconferencia según se le notificó al recurrente. Surge de la *Resolución*[4] recurrida que el señor Mercado Cuevas no admitió las violaciones imputadas, emitió su declaración más no presentó prueba a su favor.

La Oficial Examinador, Eleine Marie Reyes Torres, analizó la siguiente prueba documental:

> -Documento de derechos que le asisten al confinado;
> -Citación a vista administrativa;
> -Reporte de Cargos;
> -Querella Disciplinaria;
> -Investigación, Lista de Oficiales o Cadetes que participaron en el operativo del 4 de noviembre de 2025;
> -Informe de operativo masivo del 4 de noviembre de 2025;
> -Informe del 4 de noviembre de 2025 del Sr. José Figueroa Colón;
> -Informe Superintendente, Sr. Víctor Bermúdez, del 4 de noviembre de 2025;
> -Copia Libro de Registro; y
> -Declaración del Agente José Figueroa Colón.

Al respecto, la Oficial Examinador apuntaló que la referida prueba constituía la totalidad del expediente administrativo. A su vez, esta formuló las siguientes determinaciones de hechos:

> El 6 de noviembre de 2025 se radicó un informe de querella de incidente disciplinario imputando al querellado Mercado la violación de los códigos 108, 110 y 232.
> El 4 de noviembre de 2025 se realizó un registro en el edificio 4, sección B, celda 104.
> La celda 104 corresponde al querellado.
> Se ocupó un celular, marca IPhone 13, modelo Pro Max, con IMEI 357624692792191 y número de serie GJW14JPK71 de la compañía T-Mobile.
> El interior del celular guardaba fotos, audios, videos del querellado.
> Las fotos incluyen armas blancas caseras.
> Se evidencian cuentas activas en redes sociales como: Facebook, Instagram, WhatsApp y Threads.
> El 14 de enero de 2026 mediante sistema de video conferencia se celebró la vista disciplinaria a la cual compareció el Querellado y emitió su declaración.

---

[4] SUMAC TA, Entrada núm. 4, Anejo, a la pág. 40-41.

La Oficial Examinador razonó que el registro, en el que se ocupó el celular, se realizó el 4 de noviembre de 2025 y no el 29 de octubre como alegó el recurrente. Lo cual se demuestra en los informes que forman parte del expediente administrativo. También esta precisó que, respecto a la alegación del recurrente sobre que el *Reporte de Cargos* le fue entregado el día antes de la vista, el Reglamento Núm. 9221 no dispone el momento en que se debe entregar al querellado el documento, ni cuándo fuera entregado no altera el cumplimiento de los términos reglamentarios.

Por tanto, concluyó que, luego de evaluar el testimonio del señor Mercado Cuevas, el contenido del celular y la totalidad del expediente administrativo, este incurrió en los Códigos 108 y 110 no así en el 232, ya que no se configuran los elementos del mismo. Por lo que, privó al recurrente del privilegio de recreación activa, actividades especiales, comisaría, visita y cualquier otro privilegio concedido por la institución por el término de 120 días calendarios.

La *Resolución* objetada se le entregó al recurrente el 23 de enero de 2026 y este instó oportuna reconsideración.[5] En esencia, cuestionó que el *Reporte de Cargos* le fuera entregado un día antes de la vista administrativa, lo que le impidió acceso a evidencia en su contra, lo colocó en un estado de indefensión y se le dificultó la preparación de su defensa. Además, este alegó que no contó con el término razonable para conocer en detalle los cargos y examinar la evidencia. Lo que conllevó violación al debido proceso de ley.

El DCR, mediante la *Determinación*, emitida el 12 de febrero de 2026, decidió acoger la reconsideración y la declaró *No Ha Lugar*. Reafirmando, así la sanción impuesta. En cuanto a los planteamientos esgrimidos por el recurrente en su pedido, la Oficial Examinador coligió que:

(...)

---

[5] SUMAC TA, Entrada núm. 4, Anejo, a las págs. 42-55.

> El querellado presentó durante la vista evidenciaria la misma alegación sobre el reporte de cargos. Aunque fue contestada en la resolución, vamos a aclarar, lo que amplió en reconsideración. La [R]egla [6] aludida, dispone que se informará al miembro de la población correccional la posibilidad de solicitar copia de todo documento que sea parte del reporte de cargos. Hacemos énfasis en "posibilidad". Es decir, que no es un asunto que invalide u obligue. Por otra parte, y más importante, el reporte de cargos no incluye, conforma, es parte o es acompañado por ningún otro documento. Ante ello, no hay violación del debido proceso o en forma alguna se ha limitado al sancionado sus derechos de defenderse.
>
> La reconsideración no presenta evidencia que demuestre que el querellado no incurrió en las violaciones por las cuales se encontró Incurso. La evidencia documental y la investigación realizada cumplen con el estándar de evidencia que requiere el reglamento disciplinario, la evidencia es preponderante. La reconsideración presentada no aporta evidencia que sustente una revocación.

Todavía en desacuerdo, el recurrente acude ante esta *Curia* imputándole a la agencia haber incurrido en los siguientes errores, según la lectura del escrito:

> EL INFORME DE QUERELLA DE INCIDENTE DISCIPLINARIO NO IDENTIFICA ALGÚN TESTIGO NI EL NÚMERO DEL CONFINADO COMO SE REQUIERE; FUE REDACTADO A MAQUINILLA Y A MANUSCRITO LO CUAL PUEDE INVALIDARLO; NO ESPECIFICA ADECUADAMENTE EL LUGAR DONDE OCURRIÓ EL INCIDENTE; Y LA HORA DEL REGISTRO ESTÁ INCORRECTA.
>
> EL REPORTE DE CARGOS FUE ENTREGADO UN DÍA ANTES DE LA VISTA DISCIPLINARIA LO QUE IMPIDIÓ QUE PUDIERA PREPARAR SU DEFENSA DEBIDO A QUE TODA EVIDENCIA DEBIÓ SER ENTREGADA AL RECURRENTE A TIEMPO.

El 16 de marzo de 2026, emitimos una *Resolución* en la que, entre otros dictámenes, ordenamos al DCR elevar el expediente administrativo, lo que cumplió y; además, le concedimos hasta el 13 de abril para expresarse. Llegado ese día, la agencia cumplió con lo ordenado. Así, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados las comparecencias de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

**Revisión judicial de las decisiones administrativas**

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Buxó Santiago v. ELA et. als.*, 2024 TSPR 130, 215 DPR ___ (2024). *Specialty et al. II.*, 179 DPR 923, 940 (2010).[6]

No obstante, esta deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder cuando: (1) la misma no esté basada en evidencia sustancial; (2) la agencia erró en la aplicación o interpretación de las leyes y el reglamento; (3) su actuación resulte ser una arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743 (2024). Por consiguiente, la revisión judicial de una decisión administrativa se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II, supra*, a la pág. 940.

En este ejercicio, nuestro más alto foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca

---

[6] Véase, también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003); *Transp. Sonell v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024).

suficiente evidencia para derrotarla. *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006). Quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Íd.*

Como corolario a lo anterior, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos realizadas, por una agencia administrativa, serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias,* 160 DPR 409, 432 (2003). De modo que, la parte afectada, deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota,* 163 DPR 716, 728 (2005). En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, Ley núm. 38-2017, *supra.* Sin embargo, ello "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota,* supra, a la pág. 729. Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea

por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.*

En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional para explicar la determinación administrativa. *ECP Incorporated v. OCS,* 205 DPR 268, 282 (2020); *Hernández, Álvarez v. Centro Unido,* 168 DPR 592, 616 (2006), citando a *Otero v. Toyota,* supra.

**El Debido Proceso de Ley en el procedimiento adjudicativo administrativo**

En su concepción abarcadora, el debido proceso de ley se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012) citando a *Marrero Caratini v. Rodríguez Rodríguez,* 138 DPR 215, 220 (1995). Por tanto, el procedimiento adjudicativo ante las agencias debe ceñirse a las garantías mínimas del debido proceso de ley. *PVH Motor v. ASG,* 209 DPR 122, 131 (2022).

La dimensión procesal del debido proceso de ley en el contexto adjudicativo exige como mínimo: (1) **la notificación adecuada del proceso**; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de un abogado, y (6) que la decisión se base en el expediente. *Íd.*; *Calderón Otero v. C.F.S.E.,* 181 DPR 386, 399 (2011); *Vázquez González v. Mun. de San Juan,* 178 DPR 636, 643 (2010). Estas salvaguardas constitucionales se encuentran, de igual forma, reconocidas en la *Carta de Derechos* de la Ley núm. 38 de 30 de junio de 2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* 3 LPRA sec. 9601 *et seq.* (LPAUG). Adicionalmente, la Sección 3.1 de la LPAUG, 3 LPRA sec. 9641, enumera las garantías procesales que deben ser

salvaguardadas en todo procedimiento adjudicativo celebrado ante una agencia, como lo son: **la notificación oportuna de los cargos o reclamos contra una parte**, a presentar evidencia, a una adjudicación imparcial y **que la decisión sea basada en el expediente**. Además, nuestro alto foro ha establecido que la garantía de notificación, salvaguardada por el debido proceso de ley, debe caracterizarse como "real y efectiva, ajustada a los preceptos estatutarios aplicables". [citas omitidas]. *PVH Motor v. ASG*, supra.

Por último, es sabido que, en el ámbito administrativo, el debido proceso de ley no tiene la misma rigidez que en los procedimientos adjudicativos ante los tribunales. *PVH Motor v. ASG*, supra; *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 329 (2009); *Almonte et al. v. Brito,* 156 DPR 475, 481 (2002). Esto obedece en gran medida a la necesidad que tienen las agencias administrativas de tramitar sus procedimientos de forma expedita y a la pericia que se presume tienen para atender y resolver los asuntos que le han sido delegados. *Román Ortiz v. OGPe*, 203 DPR 947, 954 (2020); *Báez Díaz v. E.L.A.*, 179 DPR 605, 623 (2010). **Sin embargo, se ha reiterado que el procedimiento adjudicativo administrativo debe de ser justo en todas sus etapas y tiene que ceñirse a las garantías mínimas del debido proceso de ley, conforme al interés involucrado y a la naturaleza del procedimiento que se trate.** *Román Ortiz v. OGPe,* supra; *Álamo Romero v. Adm. de Corrección*, supra, a la pág. 330.

### III.

En esencia, el recurrente planteó que el DCR erró al emitir un *Informe de Querella de Incidente Disciplinario,* el cual no identifica algún testigo ni el número del confinado como se requiere; fue redactado a maquinilla y a manuscrito lo cual puede invalidarlo; no

especifica adecuadamente el lugar donde ocurrió el incidente; y la hora del registro está incorrecta.

Además, señaló que el *Reporte de Cargos* le fue entregado un (1) día antes de la vista disciplinaria lo que impidió que pudiera preparar su defensa debido a que toda evidencia debió serle entregada a tiempo.

Respecto al primer señalamiento de error, el *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional*, Reglamento Núm. 9221, en la Regla 6- *Querella Disciplinaria*, acápite (A), dispone el contenido de la querella. Al respecto, la norma preceptúa que la querella se redactará **en letra legible** y contendrá, entre otra, la siguiente información: una descripción clara y detallada del incidente que dé lugar a la misma; nombre del miembro de la población correccional querellado, nombre de los testigos, si alguno; la prueba obtenida; y nombre e identificación precisa del querellante.

Asimismo, la Regla 6 (D) establece que el *Reporte de Cargos* se notificará al miembro de la población correccional del acto prohibido que se le imputa; la notificación debe ser clara y específica, precisando los hechos y acciones que constituyen la violación a las reglas y normas de conducta impuestas por el Reglamento; se incluirá la disposición que fue infringida y se advertirá al miembro de la población correccional que se referirá su caso para la celebración de una vista administrativa, cuya fecha se le notificará más adelante; y el documento deberá ser notificado personalmente al miembro de la población correccional más se le informará que tiene **la posibilidad de solicitar que se le provea copia de todo documento que sea parte del reporte de cargo**.

Destacamos que en el *Informe de Querella de Incidente Disciplinario*, **entregado al recurrente el 10 de noviembre 2025**, el cual este negó a firmar como recibido, y redactado en letra legible,

se le especificó una descripción clara de los actos prohibidos imputados incluyendo la fecha y la hora del incidente; se le indicó que el lugar donde ocurrió el incidente fue el Edificio 4 de la institución carcelaria; se le describió la evidencia ocupada y la forma en que se aseguró la misma; y se identificó al querellante con su nombre, firma, puesto y el número de placa. Además, se anejó el documento intitulado *Derechos que le Asisten al Confinado cuando se le Radica un Informe Disciplinario*. En este último, que sí fue recibido por el recurrente, se le advirtió claramente al señor Mercado Cuevas que tiene el derecho a solicitar que el Oficial de Querellas entreviste a testigos determinados y les interrogue con preguntas específicas.[7] Por lo que, el señor Mercado Cuevas estaba adecuadamente informado de los cargos en su contra; así como de los demás detalles relativos a la querella. Además, acentuamos que los alegados incumplimientos de la agencia, al completar los encasillados del formulario, a los que hace referencia el recurrente, no resultan suficientes en derecho para invalidar el proceso disciplinario realizado por el DCR. Esto, máxime cuando el señor Mercado Cuevas no logra refutar, a través de sus planteamientos, los hechos incontrovertidos respecto a que se realizó un registro y se ocupó el celular en su celda.

Por lo que, resulta forzoso colegir que se cumplió con las exigencias reglamentarias referentes al contenido de la querella y, en consecuencia, no encontramos que se haya violado las garantías procesales que se deben observar en el procedimiento adjudicativo ante la agencia.

---

[7] El 4 de noviembre de 2025 el Sr. José Figueroa Colón, Oficial en Funciones de Investigador de la Unidad de Inteligencia del Sistema Correccional de la Secretaría Auxiliar de Asuntos Legales e Investigativos, emitió el *Informe de Hallazgo y Ocupación de Evidencia* en el que precisó que ese día se realizó el registro rutinario institucional en el Edificio 4, Sección B, Celda 104 de la Institución Correccional Bayamón 1072. En este describió la ocupación del celular y señala que fue referido a agencias externas de ley y orden para su análisis forense e información de inteligencia. SUMAC TA, Entrada núm. 4, Anejo, a la pág. 5.

Por tanto, el DCR no incurrió en el primer error imputado.

De otra parte, respecto al segundo señalamiento de error, debemos coincidir con la parte recurrida al exponer que la Regla 6 (D) del Reglamento Núm. 9221 no establece un término dentro del cual se deba entregar al miembro de la población penal el *Reporte de Cargos*. Además, enfatizamos que mediante el *Informe de Querella de Incidente Disciplinario* el recurrente advino en conocimiento, con antelación a la vista disciplinaria, de información suficiente de los incidentes que motivan la radicación de los cargos imputados; así como nombres de los testigos, si alguno, la prueba obtenida y el nombre del querellante.

De otra parte, surge del expediente administrativo que **el 22 de diciembre de 2025** le fue entregado al recurrente la *Citación para Vista Administrativa Disciplinaria* del cual surge que se le citó para comparecer el 14 de enero de 2026 a las 9:00 am.[8]

A base de lo anterior, entendemos que haberle entregado el *Reporte de Cargos*, un día antes da vista, no implica una violación al debido proceso ley en el ámbito adjudicativo agencial. Más aún, no acogemos el planteamiento del señor Mercado Cuevas sobre que este proceder le impidió preparar su defensa. Como indicamos, desde el **22 de diciembre de 2025**, el recurrente ya conocía que la vista disciplinaria se celebraría el **14 de enero de 2026**. Lo que le permitió un tiempo de aproximadamente de 24 días para solicitar cualquier información o evidencia para estudiarla y entonces, planificar su defensa para la vista, acorde con los cargos imputados, y demás detalles de la querella, de los que advino en conocimiento desde que se le entregó el *Informe de Querella de Incidente Disciplinario* el **10 de noviembre 2025**. Lo que, sin duda alguna, le

---

[8] SUMAC TA, Entrada núm. 4, Anejo, a la pág. 3.

concedía un mayor plazo para desarrollar su alegación para refutar las imputaciones en su contra.

Recordemos que en nuestro ordenamiento jurídico se ha reiterado que el **el procedimiento adjudicativo administrativo debe de ser justo en todas sus etapas y tiene que ceñirse a las garantías mínimas del debido proceso de ley, conforme al interés involucrado y a la naturaleza del procedimiento que se trate.** *Román Ortiz v. OGPe*, supra; *Álamo Romero v. Adm. de Corrección*, supra. Asimismo, es sabido que, en el ámbito administrativo, el debido proceso de ley no tiene la misma rigidez que en los procedimientos adjudicativos ante los tribunales.

De otra parte, el recurrente, al intentar impugnar la *Resolución* objetada, no ha presentado alguna prueba sustancial, que derrote la presunción de regularidad y corrección que tiene a su favor la determinación. Así pues, subrayamos que la decisión es una razonable basada exclusivamente en la evidencia del expediente administrativo y no es una actuación arbitraria, irrazonable e ilegal.

En fin, la agencia no incurrió en el segundo error imputado.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones